# CHARLESTON.

STATE *ex rel.* CECIL A. ROBINSON v. THE BOARD OF COMMIS-
SIONERS OF THE COUNTY OF OHIO.

Submitted October 8, 1918.     Decided October 22, 1918.

1. HIGHWAYS—*Board of Commissioners—Maintenance of Highway—Statute.*

    By reason of the acceptance of the provisions of chapter 10 of the Acts of the legislature of 1890, by the Board of Commissioners of Ohio County, the duty and obligation devolved upon that board to properly maintain that part of the Cumberland road lying within said county of Ohio.   (p. 726).

2. SAME—*Maintenance of Road—Extent.*

    Such duty and obligation extends to the roadway being actually used as the Cumberland or National road, even though such actually-used roadway may not be upon the exact location originally selected for the said road.   (p. 726).

3. MANDAMUS—*Duty of County Commissioners—Maintenance of Highway.*

    Where it is the duty of a board of county commissioners to keep and maintain a highway in a proper state of repair, mandamus will lie to compel the performance of this duty.   (p. 727).

Certified question from Circuit Court, Ohio County.

Mandamus by the State, on relation of Cecil A. Robinson, against the Board of Commissioners of the County of Ohio. Demurrer to alternative writ overruled, and question certified from the circuit court.

*Affirmed.*

*Charles J. Schuck,* for plaintiff.

*David A. McKee and Carl G. Bachmann,* for defendant.

RITZ, JUDGE:

In the early part of the last century the National Government entered upon a policy of internal improvements, included in which was a national road extending from a point upon the Potomac river, near the town of Cumberland, Maryland, to a point west of the Ohio river, in the then territory of Indiana.  This road was partially constructed and main-

tained by the National Government at large expense.  Before the project was entirely completed a school of statesmen came into control of. governmental affairs who beleved that the National Government did not possess the power under the Constituton to carry on such works, and that every day this road was maintained and owned by the Government constituted a flagrant violation of the fundamental law.  This resulted in 1835 in an Act of Congress making an appropriation to complete the road and put it in good repair, after which it was to be turned over to the several states through which it passed.  That part lying in the state of Virginia was accepted by that state by an act of its legislature.  From that time until the formation of the state of West Virginia that part of the road lying in what is now the state of West Virginia was under the control of the Board of Public Works of the state of Virginia.  Upon the formation of the state of West Virginia this part of the road became the property of the state of West Virginia, and the control and management of it was placed in the Board of Public Works until the year 1890 when, by an act of the legislature, said road was turned over and ceded to the board of commissioners of Ohio county, in which county it lay, upon condition that said board of commissioners maintain the same and accept the grant thereof by the legislature.  Said board, on the 25th day of November, 1891, passed an ordinance accepting the cession of said road so made by the act of 1890, and assuming the maintenance, care and control of the same.  Subsequently, in the year 1917, an act was passed by the legislature definitely locating the road through the city of Wheeling in Ohio county, and defining the duties of the board of county commissioners of Ohio county in regard thereto.  So far as it attempted to prescribe the duties to be performed in connection therewith by the board of county commissioners, it did no more than recite the obligation said board took upon itself by the acceptance of the road under the provisions of the act of 1890.  The only effect of the act of 1917, if indeed it had any effect at all, was to fix the location of the road upon the ground, it being recited in the act that there was some controversy as to the location of the road,

but no controversy as to its actual location upon the ground. It is averred in the alternative writ that at at least one point on the line of this road in Ohio county the board of county commissioners has allowed it to become in bad repair, that one of the retaining walls supporting the same is falling down, and that the same has become dangerous for travel, and that unless immediate attention is given to the repair of it it will become impassible. The purpose of the writ is to compel the board of county commissioners to make the repairs necessary, and to maintain the road in a reasonably safe condition.

It will be observed from the history of this highway, as above stated, that it is on a very different basis from the ordinary county road. It was constructed by the National Government at a considerable expense, its promotors expecting that it would form a great highway or link connecting the peoples in what was then considered the far west, the Territory of Indiana and the State of Ohio, with those living in the more enlightened eastern states. After its construction settlements were established and grew into considerable towns along almost its entire length, and the subsequent prosperity enjoyed by these thriving commercial cities testifies to the wisdom of the promotors of the project. When the National Government, however, abandoned the policy of internal improvements the state of Virginia, so far as the road lay therein, took upon itself the burden of maintaining it, with the right to the National Government to use the same free of any tolls for such use, and this obligation upon the formation of the state of West Virginia devolved upon and was assumed by that state, until the board of county commissioners of Ohio county, in the year 1891, took upon itself the burden of performing this obligation. There can be no doubt that this was within the power of said board. This board by this act received a valuable piece of highway over which it had theretofore no jurisdiction. The assumption of the obligation to maintain the road, in consideration of this transfer to it, was a perfectly legitimate governmental function, and one which it cannot now avoid. The fact that the part of this road which it is complained is out of repair lies with-

in the corporate limits of the city of Wheeling cannot relieve the board of county commissioners of the duty voluntarily assumed by it. It may be that because of the fact that the road runs through the city of Wheeling the city authorities might, in order to make it still a better road, contribute something to its improvement and maintenance, but the primary obligation to maintain it and keep it in repair is upon the board of county commissioners. It is contended that the act of the legislature of 1917, above referred to, is unconstitutional. Whether this is the case or not makes no difference. The duty and obligation resting upon the board of county commissioners was not fixed nor in any wise affected by the act of 1917, but became absolute by the acceptance by that board of the provisions of the act of 1890 by which this road, with the obligation to maintain it, was taken over by said board. There is some question it seems as to whether or not the road at the present time is on the exact location that it was when established by the National Government. It does not appear, however, that there is any question as to the actual location of the road on the ground, or at least that there is a road located, improved and maintained upon the ground known as the Cumberland road, whether it is upon the exact location established by the National Government when the road was first located or not. It cannot be expected that a highway of this character will, for more than a hundred years, occupy in all respects the same location that it occupied when first laid out. Slight variations in all probability have been made from time to time, but this fact does not change the obligation of those charged with its maintenance. The road upon such changed location is just as much the Cumberland road as though it was upon the original location selected at the time it was established, and the obligation of those charged with the maintenance and upkeep of the road to maintain it upon the location over which it is actually used, even though this may be in some instances a different location from that originally selected, is the same as though it had never been changed in the slightest degree.

The one remaining question is the propriety of the remedy

adopted in this case. As we have before determined, the obligation is upon the board of county commissioners to maintain this road in proper repair, but is mandamus an appropriate remedy to compel the performance of this duty? In Bailey on Habeas Corpus, Mandamus, &c., at p. 1085, it is said: "It being the duty of supervisors of towns in some states, and in others commissioners of highways, to keep and maintain highways in a suitable state of repair, mandamus will lie to compel the performance of this duty, but will not interfere with the discretion of such bodies or officers as to the character of the, repairs that shall be made." This text seems to be well supported by authority. *Borough of Uniontown* v. *The Commonwealth Ex Rel. Beech,* 34 Pa. St., 293; *Hammar* v. *The City of Covington,* 3 Met. (Ky.) 494; *State Ex Rel. Cutter* v. *Kamman, Trustee,* 151 Ind. 407; *The People Ex Rel. Burke* v. *The Mayor and Council of the City of Bloomington,* 63 Ill., 207; *Union Drainage District No. 1* v. *O'Reilly,* 34 Ill. App. 198; *Perrault* v. *Les Syndics des Chemins A Barrieres de Montreal,* Rap. Jud. Quebec, 9 C. S. 512.

It follows from what we have said that the demurrer to the alternative writ of mandamus was properly overruled, and we answer the question certified accordingly.

*Affirmed.*