T. B. O'BRIEN *v.* BOARD OF COMMISSIONERS OF OHIO COUNTY

(CC 511)

Submitted April 10, 1935. Decided June 10, 1935.

*Edmund Lee Jones* and *McKee & McKee,* for plaintiff.
*John D. Phillips, Wm. C. Piper* and *Nesbitt & Nesbitt,* for defendant.

LITZ, PRESIDENT:

The ruling of the circuit court, sustaining an amended declaration, on demurrer, has been certified to this Court for review under Code (1931) 58-5-2.

The action was brought by an abutting land owner to recover judgment against defendant, Board of Commissioners of Ohio County, for damage resulting to his property by removal of lateral support, in the improvement of the National or Cumberland Road, by the State Road Commission. The consideration of the ground of demurrer, that the defendant is not liable for the damages claimed, involves a brief history of the National or Cumberland Road and the pertinent constitutional and statutory provisions relating to public highways. The National or Cumberland Road, sixty-six feet wide and extending from a point on the Potomac River, near Cumberland, Maryland, through the State of Virginia, westward, was established and constructed by the United States under an Act of Congress of March 29, 1806, and subsequent federal legislation. Upon completion, it was ceded to the respective states through which it passed. That part lying in Virginia (which was confined to Ohio County), upon the formation of West Virginia, became a state road of the new dominion under the jurisdiction of the Board of Public Works. By an Act of February 13, 1890 (chap. 10, Extra Session, 1890), the legislature conditionally transferred "the care and control" thereof to the Board of Commissioners of Ohio County, with "all the rights, powers and duties in relation thereto, belonging to the Board of Public Works." On November 25,

1891, the Board of Commissioners accepted the trust and assumed the care, maintenance and control of the road. In *Robinson* v. *Board of Commissioners,* 82 W. Va. 724, 97 S. E. 282, the board was required by mandamus to repair a portion thereof lying within the city of Wheeling. In the opinion of the Court, written by Judge Ritz, it is stated: ''It will be observed from the history of this highway \* \* \* that *it is on a very different basis from the ordinary county road.* It was constructed by the National Government at a considerable expense, its promoters expecting that it would form a great highway or link connecting the peoples in what was then considered the far west, the Territory of Indiana and the State of Ohio, with those living in the more enlightened eastern states. After its construction settlements were established and grew into considerable towns along almost its entire length, and the subsequent prosperity enjoyed by these thriving commercial cities testifies to the wisdom of the promotors of the project. When the National Government, however, abandoned the policy of internal improvements the state of Virginia, so far as the road lay therein, took upon itself the burden of maintaining it, with the right to the National Government to use the same free of any tolls for such use, and this obligation upon the formation of the state of West Virginia devolved upon and was assumed by that state, until the board of county commissioners of Ohio county, in the year 1891, took upon itself the burden of performing this obligation. There can be no doubt that this was within the power of said board. This board by this act received a valuable piece of highway over which it had theretofore no jurisdiction. The assumption of the obligation to maintain the road, in consideration of this transfer to it, was a perfectly legitimate governmental function, and one which it cannot now avoid. The fact that the part of this road which it is complained is out of repair lies within the corporate limits of the city of Wheeling cannot relieve the board of county commissioners of the duty voluntarily assumed by it.''

The Good Roads Constitutional Amendment, adopted in 1920, imposed upon the legislature the duty to ''make provision by law for a system of state roads and highways con-

necting at least the various county seats of the state, and to be under the control and supervision of such officers and agencies as may be prescribed by law.'' Pursuant to this requirement, the legislature, by an act of April 21, 1921, (Acts 1921, chap. 112), created the State Road Commission with comprehensive authority to locate, establish and maintain a system of state roads and highways connecting at least the various county seats of the state with important roads of other states. The commission was also vested with authority to take over and assume charge of the further construction, reconstruction and maintenance of all roads, or sections of roads, of prescribed specifications, on state routes, including roads within incorporated towns and cities of not more than 2,500 inhabitants. It was, however, provided that no roads lying within an incorporated town or city having a population of more than 2,500 persons, *''except the National or Cumberland Road through the City of Wheeling,''* Ohio County, shall be taken over by the commission. Under the statute, the cost of all rights of way required for any state or county-district road or roads or for the purpose of widening, straightening, grading, or altering any such road or roads is required to be paid by the county court of the county in which the road or roads shall lie. This provision is enforceable (*State Road Commission v. County Court of Kanawha County,* 112 W. Va. 98, 163 S. E. 815), and the county courts of counties in which state roads have been constructed or improved are liable for damages thereby resulting to abutting or adjacent property. *Kinney v. County Court,* 110 W. Va. 17, 156 S. E. 748; *Garden v. County Court,* 110 W. Va. 195, 157 S. E. 411. In an interpretation of the Good Roads Amendment, this Court, speaking through Judge Hatcher, in *State Road Commission v. County Court of Kanawha County,* 112 W. Va. 98, 163 S. E. 815, said: ''The amendment, as the later expression of the popular will, would prevail over anything to the contrary in former constitutional provisions. Cooley, *supra,* p. 129. The amendment in fact confers but little if any power on the legislature which it did not already have, except the power to issue bonds. It does dispel, however, any doubts which could

possibly arise as to the regency of the legislature over such roads as should be included in the state system."

The basis presented by its counsel for the alleged non-liability of the defendant is that the exception of the "National or Cumberland Road through the City of Wheeling" from the general provision of the statute (Code 1931, 17-4-7), forbidding the State Road Commission from taking over highways in towns or cities of populations in excess of 2,500, violates section 39, Article VI of the State Constitution, inhibiting the legislature from passing local or special laws for "laying out, opening, altering and working roads or highways." Applying the constitutional interdiction to the factual situation, the argument of counsel necessarily assumes the position that the part of the National or Cumberland Road lying within the City of Wheeling belongs to the general class of city streets, and cannot, therefore, be treated differently by the legislature. This theory is presented by counsel as follows: "The statute in question, Section 20, Chapter 112 of the Acts of 1921 (Code 17-4-7), contemplates two classes of roads or highways. The first consists of all roads or streets on the state routes which have been improved with a hard surface, and which do not lie within any incorporated town or city having a population of more than twenty-five hundred persons. This class of roads is to constitute the state road system. The second class of roads consists of those lying within any incorporated town or city 'having a population of more than twenty-five hundred persons'. The State Road Commission is specifically denied the right to assume any control or jurisdiction over this second class of roads. From this latter class, however, 'the National or Cumberland road through the City of Wheeling, in Ohio County' is excepted, as a result of which that said municipal street is the only member of the class to which it belongs that is made a state road."

It is submitted that the legislature did not undertake to classify all roads within municipalities of more than 2,500 inhabitants, including the "National or Cumberland Road through the City of Wheeling," as city streets, and then except from this class the National or Cumberland Road through the City of Wheeling. The statute recognized the "National

or Cumberland Road through the City of Wheeling,'' as belonging to a class differing not only from municipal streets, under the jurisdiction of the municipal authorities, but from any other public road in the state. It placed municipal streets in two classes, those in towns or cities of less than 2,500 inhabitants in one class and those of more than 2,500 inhabitants in another. The National or Cumberland Road through the City of Wheeling was, at the time of the enactment in question, under the control of the Board of Commissioners of Ohio County virtually as agent of the state and federal governments. The marked difference between the status of this road and that of municipal streets, under the sole jurisdiction of the municipalities, certainly constitutes a reasonable basis for the classification recognized in the statute. Counsel for defendant admit that ''the National or Cumberland Road through the City of Wheeling is on a different basis than the ordinary municipal thoroughfare,'' but deny that ''the unique history of this highway is sufficient to reconcile that portion of section 20, chapter 112, Acts 1921, which purports to make it a state road, with the express constitutional inhibition contained in section 39 of Article VI.''

The ruling of the circuit court is affirmed.

*Affirmed.*