# CHARLESTON.

STATE *ex rel.* ISADORE GORDON, RELATOR v. STATE BOARD OF CONTROL.

Submitted March 2, 1920.    Decided March 9, 1920.

1. MANDAMUS—*States*—*Mandamus Does not Lie to Compel State Board of Control To Perform its Contract to Supply Convict Labor.*

    Mandamus does not lie to compel the State Board of Control to perform the covenants of a contract made between it and a contractor, agreeing to supply him with a certain number of convicts from the state penitentiary to labor in his factory located therein, for a definite period of time at a certain price per day for each convict so employed.    Such a proceeding is virtually one against the state and cannot be maintained. (p. 741).

2. SAME—*Will not Lie to Compel Performance to Prevent Breaches of Contract Involving Discretion.*

    Unless so provided by statute, mandamus can not be employed to compel performance, or prevent breaches of contracts involving discretion in the contracting parties. (p. 744).

Original application for mandamus by the State of West Virginia, on the relation of Isadore Gordon, against the State Board of Control and another.                    *Writ refused.*

*Everett F. Moore* and *J. M. Ritz,* for relator.

*E. T. England, Attorney General* and *Blue & McCabe,* for respondents.

WILLIAMS, PRESIDENT:

This is an original application to this court by Isadore Gordon, the relator, for a writ of mandamus to compel the State Board of Control and Joseph Z. Terrell, Warden of the State Penitentiary, to apportion and deliver to him, a sufficient number of convicts to make his quota 275, the number contracted for, and to prevent them from withdrawing from him any of those who have already been delivered to him, and to compel the return to him of those who have been withdrawn after they had been assigned and allotted to him. Relator avers in his petition that, on the 27th of July, 1916, he entered into a contract with the State Board of Control whereby, in consideration of 70c per day for each convict to be employed under said contract, it agreed to furnish him 275 convicts, male and female, for a period of five years, beginning on the 18th of September, 1916, to work in his factory located within the walls of the penitentiary, and that he has fully and faithfully performed all of the covenants set forth in said agreement upon his part. It is averred the contract provided that, if for any cause, there should be a deficiency in the number of convicts available, and the State Board of Control should be unable to furnish the full number of convicts provided for, the contractor should accept the same proportion of the whole number of convicts specified as may be furnished other contractors employing convict labor in the penitentiary; that the State Board of Control thereafter, on the 3rd day of January, 1920, and while the contract with relator was still in force, entered into a contract with the J. C. Bardall Co. whereby it let and hired to said company, for the term of four years and eight months, beginning the 1st day of January, 1920, 150 male convicts, with the privilege of as many more as may be mutually agreed upon, for which said company agreed to pay the sum of $1.00 per day for each convict so employed, and whereby it was further agreed that the number of convicts previously agreed to be furnished under a contract with said company of date May 31, 1919, should be reduced to 175, instead of 200, as named in the former contract, and that the payment for all additional labor in excess of 175 men should be made at the price of $1.00 per day for each convict; that since the first day of July, 1919, the State Board of Control has violated

its contract with relator, in that it has at no time, since that date, delivered to him the number of convicts to which he was entitled, although there were available to him during all that time a sufficient number of convicts in the penitentiary, but instead of furnishing him with his full quota of convicts contracted for, the Board of Control and the Warden of the Penitentiary have been, since the 1st of July, 1919, and are now allotting to the said J. C. Bardall Co. and to the Kleeson Co., another contractor for convict labor, convicts to which he is lawfully entitled under his aforesaid contract; that on the 3rd of February, 1920, 28 of the convicts which had theretofore been assigned to relator, though not then having his complete quota, were withdrawn from him and allotted to the said Kleeson Co. and the said J. C. Bardall Co.   Petitioner avers that these particular convicts had become skilled laborers and that their withdrawal had materially interfered with the operation of his shirt factory, operated within the walls of the penitentiary.   Relator prays for a writ of mandamus to compel the State Board of Contol, a corporation composed of E. B. Stephenson, James S. Lakin and J. M. Williamson, and James Z. Terrell, Warden of the Penitentiary, commanding them, both officially and in their individual right, to allot and deliver to relator a sufficient number of convicts to raise the number to 275, the number contracted for.

Respondents moved to quash the mandamus nisi and also made answer thereto.   The motion to quash raises at once the question whether this proceeding can be maintained.   The answer depends upon whether or not it is a proceeding against the State.   If it is it cannot be maintained.   Section 35, Article VI of the Constitution says:   "The State of West Virginia shall never be made defendant in any court of law or equity."   Although the state is not made a defendant *eo nomine,* it is, nevertheless, a proceeding against the state.   The contract is made by and between respondents, "The State Board of Control, a public corporation, acting for the State of West Virginia."   Thus by the very terms of the contract the state is shown to be vitally interested in it.   The State Board of Control is but the state's agent, and acted in making the contract for, and on behalf of the state.   A state can contract only

through its constituted officers or agents. The purpose of the writ in this case is to compel the Board of Control to carry out the state's contract as made by said board, and is therefore virtually a suit against the state, because the Board of Control is not interested in the contract otherwise than as the state's agent. Hence to compel it to perform the contract would be in effect to compel the state to do so. The question whether or not such a proceeding is one against the state is not new in this court. It arose in *Miller* v. *State Board of Agriculture,* 46 W. Va. 192. There Miller had contracted with the state, through its commissioners of public printing, to do the state's printing for two years. Claiming that the printing required to be done by it in the exercise of its public functions did not properly fall under that contract, the State Board of Agriculture refused to allow said Miller to do its printing, and employed another printing company to do it. Whereupon Miller applied for a mandamus to compel the State Board of Agriculture to furnish him its printing under his contract with the commissioners of public printing. The writ was there refused on the ground that the proceeding was virtually a suit against the state, and was prohibited by section 35, Article VI of the Constitution. The same doctrine was again announced in *Miller Supply Co.* v. *State Board of Control,* 72 W. Va. 524. That was a suit and not a mandamus proceeding, but the form of the proceeding can make no difference in the application of the principle. It was there likewise held that, although the state was not a party defendant *eo nomine,* the suit was nevertheless one against the state, it being an action against one of its governmental agencies empowered to contract on its behalf in certain matters. In making with relator the contract here involved, the State Board of Control was not acting in a purely ministerial capacity but exercised in the matter a discretion with which it was vested by the statute creating it and defining its duties, and it likewise had the power to carry out the contract or to refuse to do so. This power it exercises on behalf of the state, and it is not for the court to say whether it is acting morally right in the premises or not. That is a question belonging to the executive and legislative branches of the government. It is only for us to determine whether or not there is any power in the judiciary to compel the Board of

Control, the authorized agent of the state, to comply with its contract, and our conclusion is that there is no such power in the courts. The provision of the Constitution is mandatory and prohibitive. The proceeding, being one against the state's contracting agency, brought for the purpose of enforcing a contract made by it on behalf of the state, is therefore virtually a suit against the state itself, and cannot be maintained.

In *Comer* v. *Bankhead,* 70 Ala. 493, a suit in equity was brought against the warden of the penitentiary to compel performance of a contract entered into between him and the plaintiff whereby the warden had agreed to hire to plaintiff a certain number of convicts. By the suit plaintiff sought to enjoin the warden from supplying convicts to other contractors in violation of his contract with him, and the court held the suit was in effect a suit against the state and not maintainable in view of the constitution of that state, prohibiting suits against the state in any of its courts, without its consent. It was once held by the Supreme Court of the United State in an opinion rendered by Chief Justice Marshall; *Osborn* v. *Bank of U. S.,* 9 Wheaton 738, that to constitute a suit against the state it was necessary for the state itself to be a party to the record, but this holding has been virtually overruled in a number of subsequent decisions, and the rule now followed by that court is, that if the suit be one in which the state is vitally interested, and will have to satisfy the judgment or decree of the court, if satisfaction is made at all, then the suit is one against the state, within the meaning of the Eleventh Amendment to the Constitution of the United States, even though the suit nominally is one against the state's officers or agents. *In Re Ayers,* 123 U. S. 443, and cases reviewed in the opinion.

The present case is distinguishable from those cases wherein a state officer may be compelled by mandamus to perform purely ministerial duties involving no discretion. Such use of the writ is illustrated by the case of *State* v. *Shawkey,* 80 W. Va. 638. There the State School Book Commission, which was the state's agency authorized to contract with the publishers for the books to be used in the free schools of the state, had met and accepted the bid of W. H. Wheeler and Co., publishers of school books, and had signed the contract of acceptance and adjourned. The com-

mission had exercised its discretion and completely performed its part of the contract. The act creating the School Book Commission made the state superintendent of schools, ex officio secretary of the commission, and also made it the duty of the attorney general to prepare duplicate contracts, one copy for the publisher whose books were adopted by the commission, and the other to be retained by the commission itself. The duplicate copies of the contract had been signed by the chairman of the commission as the act provided, and by W. H. Wheeler and Co., and left in custody of Mr. Shawkey, the secretary of the commission, until the publisher should execute and file a bond as required by the act. But for reasons held by the court to be insufficient in law, the secretary refused to deliver a copy of the contract to the publisher, and the Board of Public Works, for reasons, likewise held to be insufficient, had refused to approve the bond filed by the publisher. The court there held that the contract having been executed, the matter of approving the bond and delivering a copy of the contract to the publisher were not discretionary, but were purely ministerial duties and the writs were awarded for that reason. Indeed the writ is more often used to compel public officers to perform their purely ministerial duties under the law, than for any other purpose. But it is well settled that the writ does not lie to control the discretion of an officer. It will not lie to compel the execution of a contract involving discretion; nor will it lie to compel obedience to the provisions of a contract. *Miller* v. *Board of Agriculture, supra;* and 18 R. C. L. sec. 118, p. 193.

*Writ refused.*