# CHARLESTON.

STATE *Ex Rel* L. N. YOST *et al v.* THE STATE ROAD COMMISSION OF WEST VIRGINIA.

Submitted March 6, 1924.   Decided April 8, 1924.

HIGHWAYS.—*County-District Road Must be Maintained by State Road Commission After Taking it Over, Until Legally Vacated or Discontinued.*

A county-district road, taken over by the State Road Commission as part of the State road system, under Chapter 112, Acts 1921, (Chapter 43, Code 1923), must thereafter, until legally vacated or discontinued, be maintained by the commission at the expense of the State in so far as funds for the purpose may be available.

Original mandamus by the State, on the relation of L. N. Yost, and others, against the State Road Commission of West Virginia and others.

*Writ awarded as herein provided.*

96 W. Va.

*H. H. Rose,* for relators.

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for respondents.

LITZ, JUDGE:

L. N. Yost, C. G. Conaway and D. P. Fitch, residents, citizens and tax payers of Fairmont District, Marion county, seek by mandamus the compelling of the State Road Commission of West Virginia, C. P. Fortney, Chairman, and ·E. B. Stephenson and C. E. Hiner, members thereof, to repair the floor ·of a certain bridge or viaduct called "West End Bridge", on the "Country Club Road" heretofore accepted and designated by the State Road Commission as "Project No. 2131" of the State Road system in that county and district.

Chapter 112, Acts 1921, (Chapter 43, Code 1923), creating the State road commission of West Virginia and providing for the establishment of a State road system, in Section 1, states:

> "The purpose of this act is to enact in one comprehensive statute a complete system of laws for this State governing the construction, reconstruction, maintenance and repair .of all roads, ways and bridges, and the regulation of traffic thereon; to define and classify public roads and provide for a State system of roads connecting at least the various county seats of the State and with the leading highways of adjacent States; * * * to create a State road commission; * * * to provide for the taking over by the commission from the counties, towns and cities (having a population of less than twenty-five hundred persons) of roads and routes constituting a part of the State road system, *and relieving such political sub-divisions of any further obligation and expense to improve and maintain the same, and from further authority over them."*

Section 4 of the statute divides public  roads  into  two classes:

(1)  "State Roads", which shall include all roads taken over for construction or maintenance by the State road commission pursuant to the provisions of the act.

(2)   ''County-district roads'', which shall include all other public roads except streets and other public ways in incorporated towns and cities.

Section 5 creates ''The State Road Commission of West Virginia'' as a body corporate, which may sue and be sued, plead and be impleaded, contract and be contracted with.

Section 11 vests authority and control over the construction, maintenance and regulation of all public roads within the State in the State road commission, and in the several county courts, respectively, to the extent and under the provisions and regulations prescribed in the act; and, except as otherwise provided, it gives to the State road commission superintendence and administration of the construction, reconstruction, maintenance and repair of State roads, and to the county courts a like authority over county-district roads.

Section 16 requires the State road commission, as soon as may be after the act becomes effective, to locate, establish, construct and maintain a system of State roads and highways connecting at least the various county seats of the State and with important roads of adjoining States. This section also provides that any portion or section of the State road system, prior to its being taken over by the commission, shall be known and designated as a ''State route''.

Under Section 20, when funds are available for the purpose, the commission is required, by order entered of record, to take over and assume charge of the further construction, reconstruction, and maintenance of all roads, or sections of roads on the State routes in the several counties, (except roads within incorporated towns having a population of more than twenty-five hundred persons other than the national road through the city of Wheeling), which have been improved with a hard surface, and which, *in the opinion of the commission,* shall have been constructed and maintained in accordance with approved methods, or in accordance with recognized standard plans and specifications. Certified copies of such orders shall be delivered by the commission to the clerks of the county courts of the several counties in which the respective roads or sections of roads to be taken over lie, and be by the latter recorded in the road record book of their offices.

By Section 21 the State road commission is empowered and directed to construct, *reconstruct, maintain and repair at the cost and expense of the State the roads forming the State road system* in the several counties of the State as soon as it shall have taken over such roads. And in the construction and maintenance of the roads constituting parts of the State road system, the commission is given, in addition to the powers expressly granted by the act, all the rights and powers conferred by law on county courts in the construction and maintenance of county-district roads.

Section 64 provides: "The county courts of the several counties in the State shall continue in charge of the construction, improvement and maintenance of all roads heretofore known as Class A roads located in their respective counties, and shall maintain them as county-district roads until such time as the State road commission shall, by order entered of record, take them over, either for construction, or maintenance, *after which they shall be and remain under the exclusive authority and jurisdiction of the State road commission.*"

Section 128 declares that the interest heretofore belonging to the State in any of the roads or bridges thereof and which heretofore by legislative enactment have been transferred to and vested in the various county courts of the State shall remain as vested, *except as to State roads and highways* which may be established, *taken over* or incorporated into the system of State roads and highways provided for in this act.

It is thus made manifest by various provisions of the statute that the powers conferred and duties imposed upon the State road commission concerning roads taken over by it as parts of the State road system are as fixed and permanent as those governing county courts in relation to county-district roads.

The "Country Club Road" extends from the corporate limits of the city of Fairmont, Marion county, in a southerly direction 1.67 miles. About midway between its termini, where this road crosses an interurban railway line, another road, entering Fairmont by way of Locust Avenue, leads off. On the former road, about equally distant from its termi-

nus at the city limits and the interurban crossing, is a bridge or viaduct, known as "West End Bridge", by which the highway is carried over a deep ravine. This bridge is approximately 300 feet long and elevated about 70 feet at its highest point. It consists of a steel trestle, encased in concrete, with a floor sixteen feet wide, exclusive of a sidewalk on one side. The floor is constructed of a concrete slab four inches thick, reinforced with a single sheet of metal, the meshes of which are four inches square. It has required frequent repairs since being constructed, due to its inadequate strength for the heavy traffic carried.

In the year 1915 certain highways in Fairmont district, including the Country Club and Locust Avenue roads, were improved from the proceeds of a district bond issue; the former road being hard-surfaced with "Warrenite", an asphaltic process, and the latter with brick pavement. Both roads, lying entirely within Fairmont district, were thereafter maintained and kept in repair by the county court of Marion county until March 7th, 1922, when, under Section 20 of the statute, the Country Club Road was adopted and taken over by the State road commission as "Project No. 2131" of the State road system in Fairmont district and Marion county, connecting Fairmont, the county seat of Marion county, and Clarksburg, the county seat of Harrison county. A certified copy of an order entered by the commission, taking over said road, was recorded in the office of the clerk of the county court of Marion county, as required by said section. The commission thereupon assumed an exclusive supervision and control of this highway; and continued to exercise such supervision and control, by improving and maintaining the road, until May 29th, 1923, when, without notice, it undertook to abandon the portion thereof lying between the interurban car line and the city limits of Fairmont, hereinafter denominated "West End Bridge route", and to substitute therefor the Locust Avenue road, by entry of the following order:

> "The Commission having before it for consideration the matter of location of the State Road between Clarksburg and Fairmont, as to which of two available roads the same shall enter the City of Fairmont, and it ap-

pearing to the Commission that there are two routes available, one by way of the Warrenite Road, Project No. 2131 and Fairmont Avenue and Adams Street to the Court House and the other via Locust Avenue, Jackson Street and Jefferson Street to the Court House and it further appearing to the Commission that there are certain advantages in the Locust Avenue route in that it is a shorter route; has a wider pavement and avoids what is known as the Country Club Road, or viaduct, which at no far distant date will have to be rebuilt should this road be adopted as a State Route.

"Therefore, on motion of Commissioner Hiner, duly carried, it is ordered that the State Route entering the City of Fairmont from Clarksburg be designated as follows: That is to say, via Locust Avenue extended from the intersection of the Country Club Road at the Edgmont Street car stop to Locust Avenue via Locust Avenue to Jackson Street via Jackson. Street to Jefferson Street and via Jefferson Street to Marion County Court House."

Since the attempted abandonment of the West End Bridge route the commission has ceased to maintain or repair it. The county court, denying authority or duty to maintain this road since its incorporation into the State highway system, refuses to assume jurisdiction thereof or to repair the same. So, without legal proceeding and in disregard of the rights of those locally dependent upon its use, this thoroughfare has been cast aside by all public authority.

The floor or roadway of the bridge is in great need of repair and, unless remedied, will soon become impassable. On the easterly side thereof, about 100 feet from the northerly end, is a hole three feet in diameter; and seventy-five feet southwesterly therefrom is another hole four by six feet. It is otherwise defective and dangerous to travel.

The petition and alternative writ show that the petitioners own and occupy residence properties adjacent to the West End Bridge route; that it is necessary for them to cross the West End bridge in vehicles several times daily, and the closing of said bridge would greatly depreciate the value of their properties; that the Country Club Road, and every part thereof, prior to its being taken over by the State road commission, had been constructed and maintained in accord-

ance with approved methods, and recognized standard plans
and specifications, within the meaning of the act.

The joint return of respondents admits that on March 7th,
1922, by an order entered of record on that date, the State
road commission took over for maintenance, construction,
and reconstruction the said Country Club Road, described in
the order as follows:

> "Project No. 2131: Fairmont-Clarksburg.
>
> 1.67 miles of Warrenite, beginning at the corporate
> limits of the City of Fairmont, on the road leading to
> Clarksburg, and thence with said road to the beginning
> of Project No. 2132";

and that the said road thereupon became a State road for
the maintenance, reconstruction and repair of which, at the
expense of the State, the commission became exclusively
liable. The return further admits the attempted abandon-
ment by the commission of the West End Bridge route, and
failure on its part to maintain or repair the same; and in
justification of such action, the return also states that at
the time of taking over the Country Club Road the com-
mission was advised and believed that the bridge in question
had been constructed in accordance with recognized standard
plans and specifications, but that the contrary had since be-
come apparent; and that in order to maintain the West
End Bridge route it would be necessary immediately to re-
build the bridge at an approximate cost of from $75,000
to $100,000, which is unavailable for the purpose.

As additional reasons for preferring the Locust Avenue
road to the West End Bridge route the return further states:
the former is shorter; avoids the more congested business
district on Fairmont Avenue; makes better connections with
other State routes; does not cross the interurban line; its
paving is wider and of better character; and its right-of-way
offers better facilities for future increase in width of the
paved portion of the road. Not one of these reasons ap-
pears to have arisen since the taking over of the West End
Bridge route; so it comes back to the question of the com-
mission's right to abandon the road on the claim that the
bridge had not been constructed in accordance with recog-

nized standard plans and specifications.  It is not stated
wherein the construction fails of the requirements, nor
whether the incapacity of the bridge is due to defective con-
struction or insufficient dimensions.  So the facts averred do
not show that the commission was misled in accepting the
route served by the West End Bridge.

We find no authority to be exercised at the will of the
State road commission for the shifting of the State routes
occupying county-district roads, which have been adopted
and taken over by the commission.  It would be unfair to
the taxpayers of the districts and counties to permit the
commission to take over an improved road and after wearing
it out, substitute therefor another road which had been im-
proved by the same taxpayers; and to continue the shifting
process so as to relieve the State of maintaining State high-
ways, at the expense of local taxpayers.  Moreover, under
Section 64 of the Act, county-district roads once taken
over by the commission "*shall be and remain under the ex-
clusive authority and jurisdiction of the State road commis-
sion.*"  Such roads must thereafter be maintained by the
commission not merely because they constitute parts of the
State road system but in order to serve those locally depend-
ent upon their use.  The rule relative to the discontinuance
of highways is, "Once a highway, always a highway",
unless abandoned or vacated in due course of law.  *Ralston*
v. *Weston*, 46 W. Va. 544, 33 S. E.  326, 76 A. S. R. 834;
*Dudding* v. *White*, 82 W. Va. 542, 96 S. E. 942; Elliott
Roads and Streets, sec. 1172; 13 R. C. L. p. 62.

There can be no question that the petitioners are peculiarly
interested in the maintenance of the road in question.  "The
proprietor of land through or along the boundary of which
a way for public travel is established has a special right dif-
ferent from that of the public in the continued maintenance
of the highway, if its abandonment will injuriously affect
the access to and marketability of his land." *Dudding* v.
*White*, cited.  This road should be maintained not only as
an outlet for petitioners and other property owners along its
route, but also as an important local road serving the general
public.

It is not claimed, nor do we think, that the State road com-

mission is free from judicial control, upon the theory that this would amount to a suit against the State in contravention of Section 35, Article VI. of the State Constitution. State officers may be required by mandamus to perform their public duties. *State* v. *Shawkey*, 80 W. Va. 638, 93 S. E. 759; *State ex rel Bunch* v. *Fortney*, 93 W. Va. 292, 116 S. E. 753.

"Mandamus is generally recognized as a proper remedy to compel public officers to perform their duty to take care of and keep in repair public highways and bridges and the like, whenever the necessity for its exercise is so obvious that the refusal to act is the result of a determination not to discharge a plain duty rather than a mistaken judgment as to the existence of the necessity for repairs and the character of the repairs needed." 18 R. C. L. p. 241.

In the case of *State* v. *Board of Commissioners*, 82 W. Va. 724, 97 S. E. 282, it was held that: "Where it is the duty of a board of county commissioners to keep and maintain a highway in a proper state of repair, mandamus will lie to compel a performance of this duty".

We are of opinion, and so hold, that the respondent, State Road Commission, has not legally discontinued or vacated the West End Bridge route; that the said respondent should continue to maintain this road and repair or reconstruct the bridge thereon in so far as funds for the maintenance, repair or reconstruction of said road and bridge may be available; and in event sufficient funds are not available to repair or reconstruct the said bridge so as to render the same safe for travel, then the said bridge shall be closed until the same may be so repaired or reconstructed.

*Writ awarded as herein provided·*