APPALACHIAN ELECTRIC POWER COMPANY *v.* THE STATE ROAD COMMISSION OF WEST VIRGINIA

(No. 8373)

Submitted February 25, 1936.    Decided March 17, 1936.

*Campbell, McClintic & James,* for relator.
*Homer A. Holt,* Attorney General, and *J. F. Bouchelle,* Assistant Attorney General, for respondent.

HATCHER, PRESIDENT:

The Appalachian Electric Power Company demands payment from the State Road Commission for lighting a public bridge. With the exception of a portion of one approach, the bridge is within the City of Charleston. The bridge was constructed by the County Court of Kanawha County. In 1930, the court contracted with the Power Company, a public utility, to install and maintain certain lighting fixtures and to light the bridge electrically a period of ten years, for which certain sums were to be paid annually. The Power Company has complied with the contract to the present time. The court paid in accordance with the contract until September 1, 1934; when the court disclaimed further responsibility for the reason that maintenance of such bridges had been transferred to the Commission by Acts First Extra. Session 1933, chapter 40. The Power Company brought an action against the court in 1935 to enforce payment under the contract. That case is reported in 116 W. Va. 306, 180 S. E. 264. Failing to recover in that action, this proceeding in mandamus was brought.

The bridge is a connecting part of a primary road, and since July 1, 1933, has been designated by the state road commissioner as West Virginia Route No. 13. Chapter 40, *supra,* vests authority and control over state roads in the commissioner and imposes on him the duty of their construction and maintenance. Article 4, section 26 of that chapter gives him specific authority to designate any bridge within a municipality as a connecting part of a primary road, and provides that upon doing so, he shall

maintain the bridge. The Commission resists this action on the ground that under section 27, the commissioner assumes no greater duty in maintaining city "streets" as primary roads than he assumes in maintaining rural primary roads, and that a bridge is included in the ordinary definition of the word "street"; that it is not incumbent on him to light bridges on state roads outside of municipalities; and hence that it is not "proper or necessary" to light the instant bridge.

The pertinent parts of section 26 and all of section 27 follow:

Section 26—"The state road commissioner shall designate * * * as a connecting part of a primary road any bridge or street within a municipal corporation. The commissioner shall * * * maintain the designated connecting part at the cost and expense of the state."

Section 27—"The state road commissioner shall exercise the same control over connecting parts in municipalities, except the regulation of traffic, that he exercises over the state road system generally, but he shall assume no greater duty or obligation in the construction, reconstruction and maintenance of streets as primary roads than he is required to assume in the case of state roads outside of municipalities."

Where there is nothing in the context to the contrary, a bridge may be included in the definition of the word "street". See *Cavender* v. *Charleston,* 62 W. Va. 654-658, 59 S. E. 732. In chapter 40, however, the legislature consistently recognized and dealt with streets and bridges as separate and distinct parts of the road system. It will be noted that in section 26 itself, the words "bridge" and "street" are used disjunctively. As so used, the commissioner is directed to maintain each at the expense of the state. In section 27, the limitation upon maintenance is placed only on streets. We are not prepared at this time under the unilateral argument hereon, to hold that the limitation in section 27 was intended to apply to bridges as well as streets. Furthermore, the commissioner's supervision of the bridge after July 1,

1933, charged him with knowledge of the manner in which the bridge was being maintained and served by the Power Company. If its services were excessive or unnecessary he should have promptly notified it. He did not do so, but continued to accept the services. His passivity indicated that he then considered the services meritorious. After permitting the services to be rendered and the public to profit thereby, he cannot be heard to say now that the services were gratuitous.

The only other point raised by the Commission is that the contract between the Power Company and the county court was forbidden by the Constitution, Article X, section 8, because the contract involved the levies of future years. Long term municipal contracts for light and water have been excepted from the constitutional inhibition against contraction of future indebtedness, provided the payments due for the first year under the contracts could be made from current levies. *Allison* v. *Chester,* 69 W. Va. 533, 72 S. E. 472, 37 L. R. A. (N. S.) 1042, Ann. Cas. 1913 B, 1174; *Water Corp.* v. *Huntington,* 115 W. Va. 531, 534-5, 177 S. E. 290. Since counties are classed with cities in Article X, section 8, and both are governmental agencies, no valid reason appears for not including like county contracts within the exception. There is no allegation that the payments due the first year of the instant contract were not within the levies of that year.

The rate charged in the present contract was under the jurisdiction of, and presumably was approved by, the Public Service Commission. That rate may, therefore, be taken as the fair value of the services performed. Irrespective of the contract, the law would imply a promise by the commissioner to pay the fair value of those services.

The writ will accordingly issue.

*Writ awarded.*