LILLIAN WHITE *et al. v.* VIOLA MCCROSKEY *et al.*

(No. 9006)

Submitted April 9, 1940.   Decided April 30, 1940.

W. T. Lovins, for appellants.
W. H. Daniel, for appellees.

KENNA, JUDGE:

This chancery proceeding was brought by the complainants for the purpose of enjoining the defendants from obstructing the right of way of a road connected with the old Mason Road in Grant District, near Milton, in Cabell County.   A rather complicated series of bills of complaint and

answers resulted in proof being taken, muniments of title and plats being introduced, the finality being that the circuit court granted a perpetual injunction, and this appeal was accorded upon petition of the defendants. The showing before the trial chancellor may be summarized as follows:

In 1907, C. R. Summers and wife conveyed to Stuart H. Bowman a strip of land thirty feet wide by eight hundred and seventy-two feet in length, admittedly then being used as a county road upon which the property of the plaintiffs abutted. This strip, herein referred to as "old road" to distinguish it from the "old Mason Road", began where the old Mason Road crossed Mowerys Branch, and followed that branch on the south side west until the branch flowed into Johns Creek, and then followed Johns Creek in a general southwesterly direction, crossing the creek at a distance of approximately three hundred and sixty-one feet from the mouth of Mowerys Branch, and from there following the same straight course until it reached Summers Avenue in the Edgewood Addition to the Town of Milton. At that time, the land conveyed was being used as a public road connected with the old Mason Road at the point where the latter crossed Mowerys Branch, and when originally laid out its entire length passed through the property of C. R. Summers.

In 1929, W. A. Holley acquired from Fannie Summers, the devisee of C. R. Summers, a large lot shaped as an oblong parallelogram, the northeast corner of which was located where the southern line of the old road connected with the western line of the old Mason Road, the boundary running from there westward with the south line of the old road and continuing its course a distance of approximately fifty-five feet beyond the point where the old road turned south until it almost reached Johns Creek. From the latter corner, the line ran south by east parallel with the line of the old Mason Road a distance of one hundred forty feet, and from that point parallel with the first line a distance of three hundred fifteen feet until the west line of the old Mason Road was reached, and from that corner

along the west line of the old Mason Road to the beginning. The northern line of this lot extended along the old Bowman roadway, and the western line deviated very slightly from the old road's eastern line, Mowerys Branch and Johns Creek having a bend from the mouth of Mowerys Branch to the south and around the northwest corner of the Holley lot.

Subsequent to 1930, the State Road Commission located a new right of way from the point where Mowerys Branch crossed the old Mason Road near the northeast corner of the Holley lot and extending from there southwest diagonally through the Holley lot to its southwest corner, extending beyond its southwest corner in the same general direction from that point and following the old road until it reached the old road's western terminus at Summers Avenue in the Edgewood Addition. The new right of way cut the Holley lot into two triangular lots of approximately equal size.

W. A. Holley conveyed the triangular shaped lot lying northwest of the new right of way to the defendant, Viola McCroskey, so that her land is bounded on the southeast by what is called the new Mason Road, on the north by the old road and on the west by the old road with some slight deviation.

The property of the plaintiffs abuts upon the new right of way and upon the old Mason road. Mowerys Branch and Johns Creek lie between their property and the old right of way from the old Mason Road to the point where Johns Creek crosses the new Mason Road. The old road right of way separates that part of the Holley lot acquired by the defendant, Viola McCroskey, from both Mowerys Branch and Johns Creek.

On December 26, 1934, the State Road Commissioner, based upon the recommendation of his chief engineer, entered an order discontinuing the use of the old right of way with the exception of that part of it which fell within the boundary of the new Mason Road. The effect of that order and the question of whether the plaintiffs, notwithstanding that effect, have a vested right to the use of the

old road so that they may maintain an injunction forbidding its obstruction is the sole question raised by the record in this proceeding. Plaintiffs, apparently, have no reversionary interest in the old right of way which would entitle them to the relief sought, but claim only that the old right of way was dedicated to public use and, as abutting property owners, they acquired an interest which was disregarded by the Road Commissioner when his order of discontinuance was entered. W. A. Holley, who then owned the property now owned by the defendant, Viola McCroskey, testified that he procured the entry of the Road Commissioner's order.

The law of this state governing public highways has always been mainly statutory, concerning first the power of the county courts and now the power of the State Road Commissioner. The burden rests upon the person who seeks to establish the discontinuance or abandonment of a recognized public highway, the presumption favoring its continuance. *Keystone Bridge Co.* v. *Summers et al.,* 13 W. Va. 476, 508; *Lazzelle* v. *Garlow,* 44 W. Va. 466, 482, 30 S. E. 171; *County Court* v. *Hopkins,* 80 W. Va. 393, 92 S. E. 662. Under former statutes, county roads could be altered and the prior location discontinued in two different ways: by an affirmative action of the county court, upon petition or without petition, when the interest of the people of the county required it, and also by the action of the county surveyor with the consent of the owner of the land over which the road formerly ran. No notice was required in the beginning, but was later. *Dudding* v. *White,* 82 W. Va. 542, 546, 96 S. E. 942. When the *Dudding* case was decided, the statute further provided that when a county road was altered, the former road should be discontinued to the extent of the alteration and no further. No affirmative action to bring about the discontinuance of the old road was required, but that was an automatic result of the alteration of the former road.

When the control of our county roads was transferred from the county courts to the State Road Commission, there was a complete revision of our statutory road law,

and the provision governing a discontinuance of an abandoned road when the location of the road was altered was not reenacted, and was therefore repealed. In its stead, sub-section two of Michie's Code, 17-4-4, vesting in the State Road Commissioner power to "upon petition and hearing, or after due investigation, upon his own initiative, discontinue any road no longer necessary;" was enacted. It was under the latter provision that the order of the State Road Commissioner discontinuing the old road was entered in the case before us. No petition had been filed before the Road Commissioner, and the sole question is whether his order was entered after due investigation and upon his own initiative, involving the secondary question of whether the defendants, who are contending that the old road has been abandoned, have met the burden of proof by producing the State Road Commissioner's order, or whether they must go further and establish the validity of the conduct of the Road Commissioner leading up to the entry of that order. There is no doubt that the rule established in the *Dudding* case under the statute then in effect would have required the consent of the plaintiff here before the old road could have been discontinued, but it is to be noted that in the *Dudding* case, it was the authority of the county surveyor that was being inquired into. If it had been the conduct of the county court, the statute then in effect provided for the discontinuance of the old road to the extent of its alteration, and furthermore, that while the abutting land owners were recognized to have a greater right than the general public in the continuation of a highway, that right only insured them against injuriously affecting their access and the marketability of their land. *Lilly* v. *Bowling,* 120 W. Va. 169, 197 S. E. 299. We do not understand that complainants have been deprived of access to the public highway nor that the marketability of their property has been diminished.

West Virginia now has in excess of twelve thousand miles of improved roads, and to place upon one man the burden of personally investigating every alteration and

relocation of a public highway in the state would seem to be obviously impracticable. It is to be assumed that the Legislature acted upon the available public information when Michie's Code, 17-2a-14, was enacted, giving the Commissioner the right to delegate his power to his appointees or employees with the single exception of the power to sign contracts. This statutory provision, coupled with the well established principle that a public official is presumed to lawfully discharge the duties required by the office he occupies, would seem, beyond doubt, to place upon the complainants the requirement of making a different showing. We are of the opinion that they have not carried that burden.

The order of the Road Commissioner shows that he acted upon the advice of his chief engineer, and it is to be supposed that the chief engineer conducted a proper investigation. This record discloses nothing to the contrary. The right of the Road Commissioner to delegate his powers plainly justifies the conduct of the chief engineer. As to the Road Commissioner's acting upon his own initiative, we do not believe that this precludes the interest and suggestions that might be properly made to the Road Commissioner by persons with variegated interests. We are under the impression that it has to do only with the assumption of responsibility. If the Road Commissioner sees fit to act independently of any petition where the discontinuance of an old road is involved, in the statutory sense, we believe that he is acting upon his own initiative, there being only two courses of conduct described in the statute, one upon petition and the other independent of petition.

The first syllabus point in the case of *Heavener* v. *The State Road Commission,* 118 W. Va. 630, 191 S. E. 574, with this identical sub-section under consideration, certainly justifies the statement: assuming the initiative of the Commissioner and due investigation, the powers vested in the Road Commissioner by this section are not subject to the control of the courts except where exercised capriciously, arbitrarily or fraudulently. We feel that complainants

have not established the clear right entitling them to injunctive relief, that being the only question now passed upon.

For the foregoing reasons, the decree of the Circuit Court of Cabell County is reversed and the cause remanded.

*Reversed and remanded.*