STATE BY STATE ROAD, *etc.*

*v.*

DARNALL *et al.*

STATE BY STATE ROAD, *etc.*

*v.*

KNIGHT *et al.*

(No. 9843)

Submitted June 11, 1946.   Decided June 20, 1946.

*Arlan W. Berry, Ira J. Partlow,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for plaintiff in error.

*A. G. Mathews,* for defendants in error.

KENNA, PRESIDENT:

These two condemnation proceedings were brought in the Circuit Court of Gilmer County by the State of West Virginia against R. A. Darnall and others in the one, and against Charles W. Knight and others in the other, for the purpose of acquiring a right-of-way from the mouth of Copen Run near Gilmer Station upon the Little Kanawha River going up the *right* hand side of the creek toward Browder, a distance of a little over a mile to a point just beyond the Gilmer-Braxton County line. The purpose is to relocate for that distance an unnumbered secondary state highway formerly going up Copen Run on the *left* side of the stream.

The original location of the highway was flooded and the road washed out in at least two points in August, 1943, by a so called "flash flood". The proposed relocation is all above the high water mark of the 1943 flood and is approved by the Federal Public Roads Administration. The original location was the first submitted to that Administration by the State Road Commissioner, that body having charge of the allocation of Federal funds covering the cost of construction. The Administration's engineers disapproved the original location, after which, at their suggestion, the Road Commissioner submitted the relocation involved in this proceeding, which they have approved.

Darnall and Knight both appeared, filed answers, and resisted condemnation of their land through which the relocation passes, alleging that the State Road Commissioner in adopting that location acted arbitrarily, capriciously and in bad faith. After the taking of testimony and upon final submission the Circuit Court of Gilmer County sustained the contention of the two defendants

and dismissed the State's petition. The State is the plaintiff in error in both proceedings submitted together here.

The testimony taken relates mainly to conjectural future damages. The defendants testify that they now own and operate a coal property on the Little Kanawha River near the mouth of Copen Run locally known as the "John T." where they have a tipple and side track. They say that owing to the financial loss they suffered from the 1943 flood it is their plan to sell the "John T." operation and with the proceeds to construct a tipple and side track on the site of the new location of the highway on the right side of Copen Run for the loading of coal they intend to mine and also for the loading of strip mined coal from other operations in Gilmer County, the prospective purchasers of "John T." having assured them that they will load only coal mined by themselves. No contract of sale is shown. The prospective purchasers or their representative do not testify concerning either the possible sale or the possible method of operating in case it actually takes place. This, we believe, relates to the question of damages only and is not now before the Court.

Even in cases where the question of damages, as distinguished from the right to condemn, is considered the matters of merely possible future uses or of past or future profits from business conducted upon the property taken, are held to be irrelevant. *Gauley & Eastern Railway Company* v. *C. A. Conley, et al.*, 84 W. Va. 489, 100 S. E. 290, 7 A. L. R. 157; *Louisiana Railway & Navigation Company* v. *Baton Rouge Brickyard*, 136 La. 833, 67 So. 922, L. R. A. 1917 A. 402, 412. We cannot say that the defendants have shown by a clear preponderance that the resultant present injury to their property is so plainly out of proportion to the nature of the project and to the public service intended as to show a capricious or arbitrary course of conduct on the part of the State Road Commissioner. This, at least, they would

be required to do before the matter of damages could affect the right to condemn. The effort to prove that the Commissioner was attempting to coerce the defendants, Darnall and Knight, to sell their coal property to him by threatening otherwise to destroy its value by the relocation of the highway on what they contend is the only site upon which they can construct a tipple and a side track to serve their property, we believe, is more than met by the fact that the original location was at first submitted to the Federal Public Roads Administration by the Road Commissioner and it was only after the rejection of that plan by it that the State Road Commissioner, upon the Administration's recommendation, considered the relocation up the right hand side of Copen Run. As we read this record, the plan to relocate the highway did not originate with the Road Commissioner, but was adopted by him primarily for the purpose of procuring an allocation of Federal funds to pay the entire cost of construction. So far as this record discloses coercion was used upon, rather than by, the State Road Commissioner. We have been unable to locate a statute or a decided case that makes it improper for the State Road Commissioner to follow the advice of Federal engineers, even though that advice differs from his own first judgment and is the determining factor in obtaining an allowance of Federal funds. The extent to which the allocation of Federal funds deprived the State Road Commissioner of an independent discretion or caused him to recommend the original location believing that it would be disapproved, is among the imponderables.

The recent case in which this Court has dealt with the broad powers of the State Road Commissioner and has held that the exercise of those powers is not subject to review unless plainly shown to be arbitrary, capricious or corrupt is that of *Heavner* v. *State Road Commission* (1937), 118 W. Va. 630, 191 S. E. 574, opinion by Judge Fox. In that case will be found a lucid statement as well as citations to the leading West Virginia cases. Although the *Heavner* case was in mandamus, it involved the re-

location of a State highway and the treatment of the occupants of the property upon the abandoned location as to ingress and egress. Here there are nine dwellings on the old location, the occupants of which, though not entitled to a continuation of the same conveniences, still must be provided with a fair means of going to and from their homes. How this will be done and the expense involved we do not believe is material to the questions now before the Court.

The case of *State* v. *Horner* (1939), 121 W. Va. 75, 1 S. E. 2d 486, opinion by Judge Fox, deals with the width of the right-of-way that may be acquired in order to provide for the necessary fills, retaining walls, etc. and we believe fully answers questions of that nature presented by this record.

The defendants contend that the old location was rejected by the Federal authorities because at two points it crossed Copen Run at creek level and went under a bridge of the Baltimore & Ohio Railroad, both of which points could have been very easily and inexpensively bypassed, and that therefore the State Road Commissioner acted arbitrarily in not altering the survey of the original route in that respect and resubmitting it to the Public Roads Administration. It seems to us that the same sort of questions could be raised concerning any and all surveys that might be submitted under like circumstances if rejected, and that the extent to which a rejected survey would require alteration and change, in order to receive the eventual approval of the Federal authorities in charge, is necessarily conjectural. Perhaps Federal approval would require more than one alteration and resubmission. There is nothing in this record which shows specifically the reason for the rejection of the original location. It does seem that the two points at which the old road crossed Copen Run at creek level were its lowest points and consequently suffered most from the floods. If they were avoided, the most objectionable features of the old location would likely be eliminated, but even that is not established by engineering opinion, but is the

opinion of the two defendants in error and lay witnesses introduced by them. We are of the opinion that a change of plan not suggested by the Federal authorities would have been obviously a relative matter, and that a slight alteration of the survey, coupled with the plainly implied refusal to follow the recommendation of the Federal engineers, who, as we have stated, preferred the new location, could not have hoped to receive Federal approval. The State Road Commissioner's discretion and judgment should not be overridden by any other agency, but to say that it cannot be properly influenced by qualified and competent advice would seem to approach arbitrariness.

For the foregoing reasons the judgments of the Circuit Court of Gilmer County are reversed and the cases remanded for further proceedings.

*Reversed and remanded.*

Fox, Judge, concurring:

I agree that the rulings of the Circuit Court in these proceedings should be reversed; that the conclusion of the court that, on the record considered, the discretion of the state road commissioner was not abused is correct; that no fraud on the part of the commissioner was shown in the case; and that, upon the record presented, the petitioner showed a clear right to condemn a right of way for a road over defendant's properties. But I do not concur in giving to the order of reversal the effect of requiring the circuit court, without further hearings on the facts, to enter an order giving the State the right to enter upon the property involved under applicable provisions of law. I think that, in the peculiar circumstances presented, the case should be remanded to the circuit court with directions to require a survey and location of a proposed highway on what is termed the "old location", with such changes in the road location as will remove the same from the creek and the railway underpass. This, I understand, will involve a railroad grade crossing, and the erection of a bridge over Copen Run.

But even so, I am of the opinion that other considerations call for further exploration of the possibility of locating the highway on the old location as changed in the respects indicated above.

Of course, if the Federal Public Roads Administration will not, in any event, permit the use of Federal money on the old location, and the cost of a right of way on the new location does not appear to be probably prohibitive, then, to obtain Federal aid, the road must be located on the new location. I think, however, that the record discloses that the old location, on the left side of Copen Run, travelling upstream, has not been presented to the Federal Roads Administration in its most favorable aspects. For example, the old location, the one first presented by the Road Commissioner to the Federal Public Roads Administration, was partly in the creek, passed under the railroad bridge, in the bed of the creek, and during high water the road located thereon was impassable. Of course, no competent engineer would agree to such a location for a public highway, and naturally when it was proposed to the Federal Administration there was a prompt refusal to permit the expenditure of Federal money thereon. It appears, however, that by a change in a part of the old location the road in its entirety can be located and constructed above high water mark, although this will involve a crossing of the railroad at grade, and the erection of a bridge over Copen Run, but these facts are not shown to have been submitted to the Federal authorities, as they should have been. The record further discloses that, aside from the cost of the right of way, the road can be constructed on either side of Copen Run at practically the same expense; and when so constructed will furnish equally reasonable and safe means of transportation. This being true, I think the following suggestions furnish good grounds for the position that there should be further investigation of the old location, and the changes which can be made therein, before any final order is entered adopting the new location.

(1) The new location involves the use of a bridge across Copen Run near its mouth. This is a seven-ton capacity bridge, and is located below high water mark. Therefore, in flood periods, the road on the new location cannot be used to connect with other highways.

(2) A number of people reside along the old location, which creates the necessity for maintenance of the old road. For the greater part of the distance involved in the proposed reconstruction, if the new location is adopted and used, there will be two roads, where one will suffice.

(3) The expense of the two roads, other than the cost of rights of way, will be substantially the same.

(4) When located and constructed, the facilities for public travel will be equal, whichever location is adopted, except for those who reside along the old road, who, in using the new road, would in many instances have to travel a greater distance; and

(5) There is the question of damages to land owners in securing the new location. This, of course, is not directly involved in the present proceeding, but is one which the road commissioner should take into consideration in making his decision.

Considering these suggestions in their entirety, I think the case should be reversed and remanded to the circuit court, with direction, that, before finally passing upon the State's petition to condemn the land, required for the new location, there should be a new survey and location of the highway on the left side of Copen Run, known as the old location, with such changes therein as will provide a safe railroad crossing, and keep the road above high water mark, and that the report thereof be presented to the Federal Public Roads Administration. If the old location, as changed, should be acceptable to the Federal Roads Administration, then I think a serious question would arise whether the road commissioner would be justified in exercising his discretion in favor of

adopting the new location. I realize that a railroad grade crossing is an undesirable element in highway location, and one which might properly determine the decision of the matter by either the Federal Public Roads Administration or the State Road Commissioner in the matter at bar. I agree that there is vested in these agencies a wide discretion in the matter of the location of public highways, but I hope a situation may be brought about where the merits of the two locations can be fairly presented. To the present date, I do not think this has been done in this case. For this reason I would like to see a further development of the facts, and on this preliminary question I see no reason why that course should not be followed.