STATE *ex rel.* GUY M. ROBERTSON AND EARL H. SUMMERS

*v.*

THE STATE ROAD COMMISSION OF WEST VIRGINIA, *et al.*

(No. 10361)

Submitted January 24, 1951.   Decided March 6, 1951.

*Dale G. Casto,* and *Kay, Casto & Amos,* for relators.

*William C. Marland,* Attorney General, *Eston B. Steph-enson,* Assistant Attorney General, for respondents.

GIVEN, JUDGE:

The object of this mandamus proceeding, instituted in this Court by the State of West Virginia at the relation of Guy M. Robertson and Earl H. Summers, against the State Road Commission of West Virginia and Ray Cavendish, State Road Commissioner of West Virginia, is to compel the state road commissioner to repair and maintain a bridge across the Elk River, which bridge, together with its approaches, is wholly within the corporate limits of the Town of Clendenin. The matter is disposed of upon the pleadings, and questions of law only are raised. The contention of defendants is that the responsibility for the repair and maintenance of the bridge is that of the County Court of Kanawha County.

About 1890 the County Court of Kanawha County constructed a bridge at the site of the bridge here involved, and which bridge was a part of the county-district road system of Kanawha County. About 1923 the old bridge was replaced by the county court with the present bridge, the county court paying the entire cost thereof. However, the new bridge was constructed in accordance with plans and specifications prepared by the State Road Commission, and engineers of the commission supervised the construction thereof. The work done by the commission was at the request of the county court, and the State was fully reimbursed for the work done by the commission in the preparation of the plans and specifications, and in the supervision of the construction.

Petitioners allege that the new bridge "remained a part of the County-District Road System of Kanawha County until the 1st day of July, 1933, at which time the State

Road Commission * * * acquired said bridge and the responsibility and duty under the statutes as made and provided to repair and maintain the same." Petitioners also allege that the commission has designated the bridge as a part of the state highway system, and as proof thereof exhibited with their petition a travel guide map designated "Highway Map of West Virginia 1950", which map indicates that travelers using state roads on the easterly side of Elk River, in the vicinity of Clendenin, to reach state roads located on the westerly side of the river, must necessarily use the bridge, thus contending that the bridge "is a connecting link between the secondary highways on the east side of Elk River and the primary highways on the west side thereof." It is not denied that the bridge is in need of repair.

The answer of defendants denies: That the bridge has "become a part of the state road system" by virtue of any statutory provisions, or otherwise; that the bridge is a "connecting link" between any state highways; that the State has, in any manner, become responsible for the repair or maintenance of the bridge; and alleges that "the State Road Commissioner has never at any time by duly entered minute order officially declared and designated the bridge in question to be a connecting part of the state highway system within the municipality in the manner required by Code, 17-4-26, as amended, and that therefore the respondents declare that the bridge in question remains the responsibility of the County Court of Kanawha County * * *." Defendants filed as exhibits with their answer photostatic copies of maps of record in the state road commissioner's offices, which maps clearly show that the state roads on the easterly side of the river in the vicinity of the bridge terminate at the corporate line of the Town of Clendenin.

The replication of petitioner alleges that "the matters and things in said answer alleged as defenses in said answer are not sufficient in law", and "admits that the facts therein are true."

Pertinent provisions contained in Article I, Chapter 40, Acts of the Legislature, 1933, First Extraordinary Session, whereby control of the larger part of the roads and bridges within the State was vested in the state road commission, are:

"§26. 'Primary roads' shall mean all roads under the control and operation of the state road commission, or are designated as state roads, at the time of the adoption of this act and roads hereafter designated as primary roads.

"§27. 'Secondary roads' shall mean all roads and bridges now operated as a part of the county-district road system, except bridges and approaches maintained by county courts within municipalities.

"§28. 'State road' shall include all roads classified and prescribed as 'primary roads' and 'secondary roads.' 'Public roads' shall mean all other roads and bridges under the control of the county court or the governing body of a municipality."

Article IV of the aforesid Act provides:

"§1. The state road system shall consist of the primary and secondary roads of the state as defined in article one of this chapter. The authority and control over the state roads shall be vested in the state road commissioner.

"The county courts shall retain the superintendence and administration of roads and bridges and public landings that remain under their jurisdiction as provided by section one, article ten of this chapter."

And Article X of the same Act states, in part:

"§1. The county court shall have the superintendence and administration of the construction, reconstruction, repair and maintenance of bridges and approaches to bridges situated within municipalities and at the time of the adoption of this act remaining under the control and jurisdiction of the county court. * * *."

Section 26, Article IV of Chapter 40, Acts of 1933, as finally amended by Chapter 111, 1945 Acts, contains this

provision: "Any existing free bridge forming a connecting link between two counties or two state routes, is hereby adopted as part of the state road system and shall hereafter be maintained by the state, and any existing free bridge forming a connecting link between this and another state is hereby adopted as part of such system, and shall, as to that part of the bridge within the boundary of this state, be maintained by the state."

It is established by the pleadings that the bridge in question was under the control and jurisdiction of the County Court of Kanawha County at the effective date of the Act of the Legislature of 1933, and, the bridge being wholly within the corporate limits of the Town of Clendenin, it is clear that it was not transferred to the State as part of the roads and bridges acquired by it by virtue of that act. Being wholly within the corporate limits of the Town of Clendenin, it remained "under the control and jurisdiction of the county court." It was thereafter the duty of the county court to keep the bridge in proper repair. *Hill* v. *County Court,* 117 W. Va. 288, 185 S. E. 227. See *Power Co.* v. *County Court,* 116 W. Va. 306, 180 S. E. 264.

Petitioners contend further, however, that the bridge constitutes a necessary connecting link between the state roads on the easterly side of Elk River, and the state roads on the westerly side of Elk River, within the meaning of the provisions of Section 26, Article IV, quoted above. We think not. It is clear from the maps of record in the road commission offices, exhibited with the answer, that the state roads on the easterly side of the river extend only to the corporate line of the Town of Clendenin. There is no showing, and no contention is made, that any of the streets of the Town of Clendenin have been taken over by the state road commission. We do not think there is any conflict, between the maps exhibited with the answer and the travel guide map exhibited with the petition, as to the fact that the roads on the easterly side of the river terminate at the corporate line of the

Town of Clendenin. If such a conflict exists, however, the official maps must necessarily control, for little, if any, weight can be given to the travel guide map in consideration of the question.

Petitioners also contend that the travel guide map printed and distributed by the state road commission, together with other facts detailed above, establish that the commission has designated the bridge as part of the state road system, pursuant to its powers under Section 26 of Article IV of the Acts of the Legislature, 1933, as finally amended by Chapter 111, 1945 Acts. We think not. In *West* v. *Clarksburg*, 123 W. Va. 22, 13 S. E. 2d 155, the contention was made that the commissioner had designated a certain street as part of the state highway system, the contention being based upon the fact that the street was the only one "in Clarksburg marked with standard route signs as U. S. Route No. 19". In deciding what action on the part of the state road commissioner was required by the Act of 1933, as finally amended, to designate a city street as a connecting part of the state road system, the Court held, Point 2 of the syllabus: "The designation of a street, within a municipal corporation as a connecting part of a primary road, Acts 1933, Ex. Sess., Ch. 40, Art. IV, Sec. 26, must be made by an order entered by the state road commissioner, so that the street can be located with certainty." In the opinion the Court stated: "* * * Consistent with the principles heretofore expressed, we need go no further than to say that an order duly entered by the state road commissioner is essential to the proper designation of a city street as the connecting part of the primary road system through a municipality under the provisions of Art. IV, Sec. 26, and further that the description of the part so designated should be certain and definite. It is our opinion that the placing of route signs or markers, the assumption of maintenance duties and used by the travelling public are incidents of the designation, which necessarily follow the entry of the commissioner's order. The acts cited by the City of Clarksburg as indicating

a designation on the part of the commissioner are, of themselves, and without the order mentioned, devoid of the certainty which should characterize all acts of public officials when such acts are of vital importance to the public interest such as that of the designation here involved. * * *." The rule so laid down applies as well to a bridge.

It is within the discretion of the state road commissioner to decide what bridges will be by him designated as connecting links in the state highway system, and the exercise of such discretion can not be controlled by mandamus. *State* v. *Darnall,* 129 W. Va. 159, 38 S. E. 2d 663; *Heavner* v. *Road Commission,* 118 W. Va. 630, 191 S. E. 574; *State* v. *Road Commissioner,* 102 W. Va. 88, 134 S. E. 465, 53 A. L. R. 146.

The writ of mandamus prayed for is denied.

*Writ denied.*