STATE *ex rel.* THE COUNTY COURT OF WOOD COUNTY,

*a Corporation,* MALCOLM B. LOUDEN, *et al., etc.*

*v.*

THE STATE ROAD COMMISSION OF WEST VIRGINIA, *a Corp.*

AND BURL A. SAWYERS, *State Road Commissioner, etc.*

(No. 12202)

Submitted January 29, 1963.        Decided March 5, 1963.

624

*William R. Pfalzgraf*, Prosecuting Attorney, *Richard M. Richmond*, Assistant Prosecuting Attorney, for relators.

*Benjamin A. Ritchie*, for respondents.

BERRY, PRESIDENT:

This is a proceeding in mandamus instituted under the original jurisdiction of this Court, wherein the petitioners, The County Court of Wood County, a Corporation, Malcolm B. Louden, J. Lloyd Amos and Frank J. Harrison, Commissioners thereof, pray for a writ of mandamus to compel the respondents, The State Road Commission of West Virginia, a Corporation, and Burl A. Sawyers, State Road Commissioner of West Virginia, to assume authority and control

over the Juliana Street Bridge which crosses the Little Kanawha River in Wood County, West Virginia, part of which is located within the City of Parkersburg and part without the city limits of Parkersburg. This Court awarded a rule returnable January 9, 1963, that the respondents show cause why the writ should not be granted and on the return day of the rule the proceeding was continued, upon joint motion of the parties, until January 29, 1963. The respondents filed a demurrer to the petition and the case was submitted for decision upon briefs and oral argument.

The petition alleges that in 1889 the County Court of Wood County built the bridge in question across the Little Kanawha River in Wood County, and that it is still standing; that the north approach to said bridge connects with Juliana Street in the City of Parkersburg, and its south approach connects with the intersection of two roads outside the corporate limits of Parkersburg, said roads now being designated as State Secondary Route No. 9, which is part of the state road system supervised and under the control of the respondents; that the bridge is 868 feet in length, 175 feet of which is outside the corporate limits of the City of Parkersburg, and that the City of Parkersburg has never maintained nor controlled said bridge; that from the completion of the construction of the bridge the County Court maintained said bridge as a part of the county-district road system; that said bridge remained a part of the county-district road system of Wood County during this entire period of time until 1933; that the West Virginia Legislature, at its First Extraordinary Session, 1933, enacted a law wherein the authority and control over county-district roads and bridges was vested in the State Road Commissioner, with the exception of bridges and approaches to bridges situated *within* municipalities, which remained under the control and jurisdiction of the county courts; that the bridge in question, being a part of the county-district road system in Wood County not being within the municipality of Parkersburg, under the provisions of said Statute, became a part of the state road system under the authority and control of the respondents on July 1, 1933; that the petitioners have repeatedly requested and demanded that the respondents as-

sume authority and control over the bridge in question, but that the present State Road Commissioner and his predecessors in office have continuously refused to exercise any control or authority over the bridge.

The respondents' demurrer admits all facts well pleaded, and if the Act of the Legislature in question transferred authority and control over the county-district road system, and if this bridge was a part thereof, as alleged in the petition, no answer having been filed by the respondents, the writ prayed for should be granted.

It is the contention of the respondents, however, that the petition does not allege that the bridge in question forms a connecting link between two counties, or two state routes, as required by Code, 17-4-26, as amended; that the allegation in the petition shows that part of the bridge was within the corporate limits of the City of Parkersburg, therefore, the entire bridge could not have been a part of the county-district road system on July 1, 1933; that the petition did not allege that a proper order was ever entered by the State Road Commissioner of West Virginia, designating said bridge as a connecting link, or as a part of the state road system, and that before it can become a part of the state road system it must be designated as a part of said system by the State Road Commissioner; that such designation is a matter within the discretion of the State Road Commissioner and that the allegation of the petition establishes the fact that the bridge in question is situated within the corporate limits of the City of Parkersburg and remains under the supervision and administration of the petitioners.

This entire proceeding is controlled by the provisions of Chapter 40, Article IV, Section 2, Acts of the Legislature, First Extraordinary Session, 1933, (Code, 17-4-2, as amended), which reads as follows:

> "The commissioner shall take over the county-district roads on the first day of July, one thousand nine hundred thirty-three, and shall assume charge of their further construction, reconstruction and maintenance as a part of the state road system."

The only exception to the above mandatory provision is contained in the same Act, Chapter 40, Article X, Section 1, Acts of the Legislature, First Extraordinary Session, 1933, (Code, 17-10-1, as amended), in the following language:

"The county court shall have the superintendence and administration of the construction, reconstruction, repair and maintenance of bridges and approaches to bridges situated within municipalities and at the time of the adoption of this act remaining under the control and jurisdiction of the county court. The county court shall also have like authority over public landings. The term 'roads and bridges' in this article shall be construed to mean the bridges and approaches to bridges which under this section remain within the jurisdiction of the county court, unless the context clearly requires a different meaning.

"Pursuant to section two, article four, this chapter, the county court shall upon the first day of July, nineteen hundred thirty-three, relinquish to the state road commissioner its authority over county-district roads, and shall thereafter neither construct, reconstruct or maintain any road or bridge except as is specifically authorized by this article."

The provisions of the Act, Code, 17-4-2, as amended, automatically transferred all county-district roads to the State Road Commissioner on July 1, 1933, and said Commissioner was charged with further construction and maintenance thereof, and all bridges outside municipalities were also turned over to the State Road Commissioner to become part of the state road system on July 1, 1933. *Hill* v. *Barbour County Court,* 117 W. Va. 288, 185 S. E. 227. Only bridges within the boundaries of municipalities were retained under the jurisdiction and control of county courts, Code, 17-10-1, as amended, and did not become a part of the state road system unless designated as such by proper order of the State Road Commissioner. Code, 17-4-26, as amended; *Appalachian Electric Power Company* v. *The State Road Commission of West Virginia,* 117 W. Va. 200, 185 S. E. 223. Any bridge wholly within the corporate limits of a municipality and not transferred to the State Road Commission under

the provisions of the Act in question in 1933, Code, 17-4-2, as amended, would remain under the control and jurisdiction of the county court. *State ex rel. Robertson et al.* v. *The State Road Commission of West Virginia, et al.,* 135 W. Va. 562, 64 S. E. 2d 28. It will be noted in the *Robertson* case, this Court specifically stated that bridges wholly within the corporate limits of a municipality were the ones to remain under the control and jurisdiction of the county court. Therefore, bridges which were not wholly within the corporate limits of a municipality would come under the provisions of the Act of 1933, Code, 17-4-2, as amended, and the State Road Commissioner would be charged with the maintenance, control and supervision of such bridges. This construction of the word "within" contained in the statute, Code, 17-10-1, as amended, is fully sustained in the case of *Town of Alexandria* v. *Clark County* (Mo.), 231 S. W. 2d 622, in which it was held that where 90% of an area was within the geographical boundaries of a special road district it was not "within" the district in the meaning of the statute. In other words, where the term "within" is used in a statute, any unit, or as in the case at bar, a bridge, must be wholly within the boundary prescribed in said statute before it complies with the meaning of such statute. This was clearly indicated in the *Robertson* case, decided by this Court in 1951, and pertains to the exact question involved in the instant case. If such construction was not used in such cases, an untenable situation might occur wherein no governmental body would be responsible for the maintenance, upkeep and repair of such a bridge, or a division of responsibility might be attempted, which, of course, would create confusion.

It is the contention of the respondents that if they are required to take over the supervision and maintenance of the bridge in question they could never discontinue or close said bridge if it was found to be unnecessary for use in the state highway system. They cite the case of *State Ex Rel Yost et al* v. *The State Road Commission of West Virginia,* 96 W. Va. 184, 122 S. E. 527, in connection with this contention. In answering this contention, it is only necessary to

point out that the case cited by the respondents was decided in 1924, and has no application whatsoever at the present time. The same Act in 1933 which automatically transferred to the State Road Commission the county road system formerly maintained by the county courts also contained a provision giving the State Road Commissioner the right to discontinue any road or highway no longer needed, either by acting on a petition filed with him or by due investigation upon his own initiative. Chapter 40, Article IV, Section 4 (2), Acts of the Legislature, First Extraordinary Session, 1933. This provision is now found in Code, 17-2A-8 (12), as amended. This Court has heretofore held that the case cited by the respondents, *State Ex Rel Yost et al* v. *The State Road Commission of West Virginia, supra,* is no longer applicable as a consequence of the Acts of the Legislature, First Extraordinary Session, 1933. *Heavner* v. *State Road Commission et al.,* 118 W. Va. 630, 637, 191 S. E. 574. This right of the Commissioner to discontinue unnecessary roads or parts thereof has been repeatedly upheld by this Court. *White et al.* v. *McCroskey et al.,* 122 W. Va. 261, 8 S. E. 2d 827; *State by State Road Commission etc.* v. *Darnall etc.,* 129 W. Va. 159, 38 S. E. 2d 663. This matter was clearly disposed of by the first point of the syllabus in the case of *Heavner* v. *State Road Commission et al., supra,* wherein it was held: "Under the provisions of Section 4, Article 4, Chapter 40, Acts of the Legislature, First Extraordinary Session 1933, the State Road Commissioner has power 'upon petition and hearing, or after due investigation, upon his own initiative, (to) discontinue any road no longer necessary' and such power is not subject to the control of the courts, except where its exercise is capricious, arbitrary or fraudulent."

It is clear from the statutes pertaining thereto, and the decided cases in connection therewith, that the bridge involved in this proceeding was automatically transferred to the jurisdiction of the State Road Commissioner for maintenance, supervision and control on July 1, 1933, and that this provision was mandatory. It is also clear that mandamus is the proper remedy in such cases. *State ex rel*

*Buxton* v. *O'Brien,* 97 W. Va. 343, 125 S. E. 154; *Meador* v. *County Court of McDowell Co.,* 141 W. Va. 96, 87 S. E. 2d 725; *Draper* v. *Anderson,* 102 W. Va. 633, 135 S. E. 837. However, the method of any supervision, repair or control of this bridge is within the discretion of the State Road Commissioner and this Court cannot control such discretion in a proceeding in mandamus. 12 M.J., Mandamus, §14; *Miller, Sheriff* v. *County Court of Tucker County,* 34 W. Va. 285, 12 S. E. 702; *State ex rel Gordon* v. *State Board of Control,* 85 W. Va. 739; 102 S. E. 688.

Therefore, the demurrer of the respondents is overruled and the writ prayed for will be awarded to the extent, and to the extent only, of compelling the State Road Commissioner to take jurisdiction, maintenance, supervision, repair and control of the Juliana Street Bridge, involved in this proceeding, and and the awarding of this writ will not in any way interfere with the use of discretion in connection with the assuming of control over said bridge in the repairing, maintenance, supervision or discontinuance thereof.

*Writf awarded.*