LEE HILL, *Administrator, etc., v.* COUNTY COURT OF
BARBOUR COUNTY

(CC 541)

Submitted March 3, 1936.   Decided March 24, 1936.

*Kittle & Kittle* and *Arthur S. Dayton,* for plaintiff.
   *Dayton R. Stemple* and *J. Blackburn Ware,* for defendant.

WOODS, JUDGE:

This is an action in trespass on the case against the county court of Barbour County to recover damages for the wrongful death of plaintiff's decedent, due to a defect in "The Philippi Old Covered Bridge", which is not within the city limits, on the theory that the commission had not designated said bridge as a part of State Route No. 56, or any other state route, and that therefore the defendant was "legally" possessed of and had the same under its control, care, custody and jurisdiction on the date of the accident, to-wit, January 9, 1934. A demurrer to the amended declaration having been sustained, the circuit court, of its own motion, certified the question of the sufficiency of the pleading to this court.

The certificate involves the validity of chapter 40, Acts of the Legislature of 1933, First Extraordinary Session, in so far as it purports to invest the state road commission, to the exclusion of the county courts, with the control and supervision of practically the entire road net of the state, as of July 1, 1933.

That the legislature has, by virtue of the Good Roads Amendment of 1920, the right to take over "state roads" as defined by section 28, article 1, chapter 40, Acts Extraordinary Session 1933, to the exclusion of any "superintendence" and "administration" by the county courts, there can be no doubt. *Road Commission* v. *County Court*, 112 W. Va. 98, 163 S. E. 815. The amendment provides, among other things, that the legislature "shall make provision by law for a system of state roads and highways connecting at least the various county seats of the state, and to be under the control and supervision of such state officers and agencies as may be prescribed by law." Free rein is given the legislature to determine what shall be included in a state system, except for the minimum requirement that the county seats must be connected, and what officer or agencies will be called upon to control and supervise the same. The force of the holding in the foregoing well considered case, is, therefore, that the legislature, if it deems advisable, may

bring all roads into one state system, and deprive the county courts of any control or supervision over the same.

The averment is made that the bridge has not been designated as a part of any state route, and is therefore still under the legal control of the county court. This is based on the theory that formal action, on the part of the road commission, is required to take over any portion of the roads or highways of the state. But can such averment stand in the face of chapter 40, Acts First Extraordinary Session 1933? It is provided therein that the "commissioner shall take over the county-district roads on the first day of July, one thousand nine hundred and thirty-three" (Sec. 2, Art. IV), and that the "county court shall (on date aforesaid) * * * relinquish to the state road commission its authority over county-district roads, and shall thereafter neither construct, reconstruct or maintain any road or bridge except as is specifically authorized by this article" (Sec. 1, Art. X). It is apparent that the legislature intended to work a transfer on the day specified without any formal action on the part of either the road commission or the county courts. The language is plain, certain and unambiguous.

But does the foregoing legislative fiat apply to "The Philippi Old Covered Bridge", which the declaration admits is a connecting link in State Route No. 56, a "primary" road within the meaning of the act (Sec. 26, Art. I)? In other words, is a formal taking still necessary?

It must be noted that section 1, article X, of the chapter under discussion, provides, among other things, that: "The county court shall have the superintendence and administration of the construction, reconstruction, repair and maintenance of bridges and approaches situated *within municipalities* and at the time of the adoption of this act remaining under the control and jurisdiction of the county court." From this, it appears that "The Philippi Old Covered Bridge", shown by affirmative averment to be outside the municipality, is not intended to be left in the control of the county court.

So, whether the bridge is technically a "secondary" (county-district) road, within the meaning of the act, it is clear, from a consideration of the whole act, that such bridges were intended to be turned over as a part of the state road system on July 1, 1933.

It is indispensable that the declaration should state facts which show a cause of action under the statute in order to invoke the benefit thereof. 59 C. J. 1200. The mere averment that the "bridge" has not been designated, or taken over by formal action by the road commission, and that the county court has "legal" control over the same, is not sufficient, where it appears to the trial court, upon demurrer, that the control of the bridge, in view of the intent of the act, had in fact been withdrawn from the county court by force of legislative mandate prior to the date of the injury. *Appalachian Marble Co.* v. *Masonic Temple Ass'n.*, 79 W. Va. 471, 91 S. E. 403. The control and supervision of the bridge being in the state road commission, the action falls.

We are therefore of opinion, for the reasons heretofore given, to sustain the action of the learned trial court, and so certify.

*Affirmed.*