672 S.E.2d 234 (2008)
WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, Division of Highways, A State Agency, Petitioner Below, Appellee
v.
CONTRACTOR ENTERPRISES, INC. and THE SHERIFF OF LOGAN COUNTY, Respondents Below
Contractor Enterprises, Inc., Appellant.
No. 33869.
Supreme Court of Appeals of West Virginia.
Submitted: September 23, 2008.
Decided: November 14, 2008.
Dissenting Opinion of Chief Justice Maynard December 16, 2008.
Dissenting Opinion of Justice Benjamin January 9, 2009.
*235 Robert B. Paul, Esq., Anthony Halkias, Esq., Legal Division, WV Department of Transportation, Charleston, for Appellee.
James M. Cagle, Esq., Law Office of James M. Cagle, Charleston, for Appellant.
A.L. Emch, Esq., Laurie Miller, Esq., Jackson Kelly, PLLC, Charleston, for Amicus Curiae Contractors Association of West Virginia.
PER CURIAM.[1]
The West Virginia Department of Transportation through its Division of Highways filed a condemnation proceeding in Logan County seeking to condemn property owned by the appellant, Contractor Enterprises, Inc. In circuit court the appellant challenged the proceeding claiming that the property to be condemned was not necessary to accomplish a public purpose. The circuit court denied the appellant's motion to dismiss and appellant's motion for a permanent injunction. Appellant appeals the circuit court decision denying both motions.
For the reasons stated infra, we affirm.

I.
The appellant, Contractor Enterprises, Inc. ("CEI"), is a family-owned corporation which engages in general contracting and surface mining. The same family also owns a corporation, Heeter Construction Inc. ("Heeter"), which engages in heavy constructionbuilding highways and dams. Together these companies own and operate a substantial number of heavy equipment machines. The companies' operations include both surface mining and highway construction in Logan County.
The property at issue in this case, 31.96 acres,[2] was purchased by CEI on April 7, 2006, from Cecil I. Walker Machinery Co. CEI's intended use of the property was for storing heavy equipment and for possible use *236 in connection with highway construction activities.[3] CEI anticipated that the property could serve as a highway construction waste material storage site for future Logan County highway construction projects.[4]
In May 2006 the West Virginia Department of Transportation ("DOT") through its Division of Highways ("DOH") advertised a Route 10 road construction project, Rita Bridge to Midway Plaza, for bid. Among the bidders was Heeter Construction, Inc. The record reflects that five bids were received and that Heeter was the low bidder. The Heeter bid, however, was substantially higher than DOH estimates for the project. After conducting an evaluation of the bids, the DOH rejected all bids which were submitted.
On December 15, 2006, after rejecting the bids on the Rita Bridge to Midway Plaza construction project, the DOT through the DOH filed an action to "CONDEMN LAND FOR PUBLIC USE" against CEI and the Sheriff of Logan County[5] for the taking of the 31.96 acres at issue in this case.[6]
On January 2, 2007, CEI filed a motion to dismiss the petition, and alternatively sought a preliminary injunction against the DOT. On January 24, 2007, the circuit court awarded CEI a temporary injunction against the DOT and set CEI's motions for final hearing.
On February 5 and February 12, 2007, the circuit court conducted hearings on CEI's motions. On June 8, 2007, the circuit court entered an order making extensive findings of facts and conclusions of law. The evidence revealed, and the circuit court concluded, that the DOH's purpose in acquiring the 31.96 acres was for use as a waste material storage site in connection with future Route 10 public road projects and that the use of the 31.96 acres was not limited to any one segment or segments of the overall Route 10 project. In its order the court also stated that "[t]he Defendant has failed to show that the DOT decision to acquire property for a waste material storage site or that the selection of this site was arbitrary, capricious, based upon fraudulent behavior, oppressive, in bad faith, or contrary to law." The circuit court concluded by stating:
The "Man-Rita Road Project" is for the use of the public and it is necessary to have waste material sites to complete the project, therefore, the Court FINDS that the condemnation of the Defendant's project for use as a potential waste material site for the completion of the road project is for a public purpose.
The order denied CEI's motion to dismiss the petition and ordered the preliminary injunction previously awarded dissolved. It is from the June 8, 2007 order that CEI appeals.

II.
The appellant does not argue that the circuit court's factual findings are erroneous, but does, however, argue that the circuit court's decision to permit the DOH to proceed with the taking is inconsistent with the facts found by the circuit court, and the decision is contrary to controlling law. From our examination of the record, we find no reason to disturb the circuit court's factual findings.
Inasmuch as the resolution of this case rests upon questions of law, our review is de novo. In Syllabus Point 1, in part, of Public Citizen, Inc. v. First National Bank in Fairmont, 198 W.Va. 329, 480 S.E.2d 538 (1996) this Court held: "Questions of law are subject to de novo review."
*237 The general statute relating to eminent domain, W.Va.Code, 54-1-2(a)(1) [2006], provides that
[t]he public uses for which private property may be taken ... are ... [f]or the construction, maintenance and operation... of public roads ... for the public use.
In the instant case there is no dispute that the Rita Bridge to Midway Plaza construction project is a public road project for public use as contemplated by W.Va.Code, 54-1-2. Furthermore, there is no issue as to whether a waste material storage site will be needed for the Rita Bridge to Midway Plaza construction project. The order in the instant case plainly states "... that there is a public necessity for waste material sites as part of the overall road construction project...."
In describing the role of the courts in condemnation proceedings, this Court has held:
Once the statutory power of eminent domain has been conferred upon an agency, a court's inquiry into the scope of such power is limited solely to the question of whether it is to be exercised in order to provide a public service.
Syllabus Point 1 of Potomac Valley Soil Conservation Dis. v. Wilkins, 188 W.Va. 275, 423 S.E.2d 884 (1992).
We begin by examining whether or not the DOT through the DOH properly acted within its statutory authority and discretion.
In W.Va.Code, 17-4-1 [1972] the Legislature provided that "[t]he authority and control over the state roads shall be vested in the commissioner of highways." Furthermore, this Court in discussing the policy of the Legislature in connection with the construction and maintenance of roads has observed that
... it was the policy of the Legislature in the enactment of the aforesaid statutes [Chapter 17 of the W.Va.Code] to provide a comprehensive and all-embracing system of statutory law, establishing a general state road system ... and providing for and investing in the commission and the commissioner the exclusive power over the construction, maintenance and control of said system[.]
State ex rel. Keene v. Jordan, 192 W.Va. 131, 133, 451 S.E.2d 432, 434 (1994) (quoting Thacker v. Ashland Oil Refining Co., 129 W.Va. 520, 528, 41 S.E.2d 111, 115-16 (1946)).
At issue in the instant case is the more specific matter of waste material storage sites and the power to condemn land for such use. Under our law the DOH is authorized to acquire land for material storage pursuant to W.Va.Code, 17-2A-8(5) [2002] which provides that
[i]n addition to all other duties, powers and responsibilities given and assigned to the commissioner [of highways] in this chapter, the commissioner may: ... (5) Acquire... by ... right of eminent domain ... all lands ... necessary and required for roads, rights-of-way, cuts, fills, drains, storage for equipment and materials and road construction and maintenance in general[.]
(Emphasis added.) The commissioner's powers are further described in W.Va.Code, 17-2A-17(f) [1967] which provides that
... the commissioner may acquire ... all real ... property ... deemed by the commissioner to be necessary for present or presently foreseeable future state road purposes.... "[S]tate road purposes" shall include provision for ...:
* * *
(f) Road-building material storage sites....
(Emphasis added.)
The commissioner of highways is also given the power to initiate eminent domain proceedings. W.Va.Code, 17-4-5 [1936] states:
The state road commissioner [division of highways commissioner][7] ... may acquire by right of eminent domain any land ... for the purpose of constructing ... any state road ... or for any other purposes *238 authorized by any provision of this chapter [Chapter 17] ....
The Rita Bridge to Midway Plaza construction project is a public road project for public use as contemplated by W.Va.Code, 54-1-2. Furthermore, the undisputed facts reveal that a waste material site will be needed for the Rita Bridge to Midway Plaza construction project as reflected in the circuit court's order which states "... that there is a public necessity for waste material sites as part of the overall road construction project...." From the statutory enactments we believe that the DOH has the statutory authority and discretion to take property for use as a waste material storage site.
The DOH enjoys a legal presumption that it acted properly under the law. In Syllabus Point 5 of State by State Road Commission v. Professional Realty Company, 144 W.Va. 652, 110 S.E.2d 616 (1959), this Court held:
In the absence of evidence to the contrary, the state road commissioner will be presumed to have performed properly and in good faith duties imposed upon him by law.
The statutory power of the DOH, however, is not without limitation. In Syllabus Point 2 of Professional Realty Company, supra, this Court also held:
The necessity for the improvement of a state highway is within the sound discretion of the state road commissioner, and his decision that such necessity exists will not be interfered with by the courts, unless in the exercise of such discretion he has acted capriciously, arbitrarily, fraudulently or in bad faith.
The burden of proving that the DOH acted capriciously, arbitrarily, fraudulently or in bad faith is upon the party challenging the DOH decision to condemn.
The appellant's argument in support of its position that the DOH acted capriciously, arbitrarily, fraudulently or in bad faith relies, in part, upon a DOH change made to the road construction plans for the Rita Bridge to Midway Plaza project after the DOH rejected the initial bids. The construction plan change added a reference to the subject property which stated that the property would be available as a "potential waste site" which could be used by the contractor "if the contractor so desires." The appellant argues that the DOT/DOH cannot make the property at issue in this case a mandatory waste site, unless the DOT/DOH complies with the particularized supporting findings required by the provisions of Title 23 C.F.R. § 635.407(g),[8] which are not present in this case. The appellant then urges that by the DOT/DOH making it a potential waste site, as opposed to mandatory, it cannot satisfy the "public use" requirements of Syllabus Point 2 of Fork Ridge Baptist Cemetery Ass'n v. Redd, 33 W.Va. 262, 10 S.E. 405 (1889). In Redd the Court held:
An application to condemn land for public use must distinctly state that the land is needed for public use, and will, when condemned, be devoted to such public use.
We disagree with the appellant's contention in this regard.
The 1889 Redd case involved an application of a cemetery association to condemn lands for its use for burial of the dead. The application was dismissed on demurrer and the dismissal was upheld for the failure of the applicant to clearly plead that the land was needed for public, as opposed to private, use in the burial of the dead. Since this case was decided in 1889, the Legislature has adopted statutes having specific application to the construction of roads and highways. Furthermore, this Court has adopted procedural rules relating to pleading which have historically been given liberal application. The Court spoke to the issue of the pleading in *239 Syllabus Point 6 of Professional Realty Company, supra, holding that: "A petition to condemn land for highway purposes is sufficient if it substantially conforms to the requirements of Code, 54-2-2."[9]
In the instant case the DOT/DOH application to condemn CEI's land specifically states that the land of CEI is "necessary for the construction of said public road [Route 10]." We, therefore, believe that the allegations in the DOT petition are sufficient to satisfy the pleading requirements of Redd, supra, Professional Realty Company, supra, and W.Va. Code, 54-2-2.
In conclusion, the DOH decision to condemn the property to serve as a waste material site was within the DOH's statutory authority and discretion. Furthermore, the appellant CEI failed to establish that the decision to condemn appellant's property was arbitrary, capricious, fraudulent or in bad faith.
We consider all remaining arguments of the appellant to be without merit.

III.
Based on the foregoing, we conclude that the Department of Transportation acting through its Division of Highways has the discretion under West Virginia law to condemn land for potential use as material storage waste sites in connection with road construction projects. We further conclude that the decision to condemn land for such purpose will not be disturbed absent a clear showing that the decision to condemn was arbitrary, capricious, fraudulent or in bad faith. Therefore, based on the uncontroverted facts and the law as discussed, supra, the decision of the Circuit Court of Logan County is affirmed.
Affirmed.
Justice ALBRIGHT not participating.
Senior Status Justice McHUGH, sitting by temporary assignment.
Chief Justice MAYNARD dissents and reserves the right to file a dissenting opinion.
Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.
MAYNARD, Chief Justice, dissenting.

(Filed Dec. 16, 2008)
This case required the Court to determine whether the West Virginia Department of Transportation, Division of Highways (hereinafter, the "DOH"), appropriately condemned property owned by the appellant, Contractor Enterprises, Inc. (hereinafter, "CEI"). The majority opinion concluded that the DOH's condemnation of CEI's land was proper. For the reasons outlined below, I believe that the majority of this Court has made a grave error in upholding the DOH's actions. Therefore, I dissent.
The dangers of abusing government power to take private property cannot be overestimated or overstated. The power of eminent domain should only be used to take private *240 property when the taking is absolutely essential for a public purpose and when there are no reasonable alternatives to such a taking. In this case, the taking was not essential or even necessary and many other reasonable options clearly existed. This taking is even more disturbing when one realizes that the DOH condemned property it simply did not need, and did so in a way that has never been done in the history of this State. The record before us includes testimony from former Cabinet Secretary of the DOT and DOH Commissioner Fred VanKirk who stated clearly that the plans for this project failed to meet the requirements for condemning private property as interpreted by the DOH during his thirty-nine years with the agency. Mr. VanKirk said,
During my tenure with the Department of Transportation, Division of Highways, either one, I don't recall the Highways Department ever condemning a site for waste or a piece of property for a waste site.
Mr. VanKirk also explained that the supporting rationale for the practice and custom of not condemning property for waste sites involved both economic and liability considerations which justified placing responsibility for the waste sites on the contractor. Mr. VanKirk explained that during his tenure with the DOH,
[w]e required the contractor to obtain the waste sites. There are economic reasons as well as liability issues involved with obtaining waste sites which we put that responsibility onto the contractor.
....
Well, with regard to the permitting process, the Division of Highways put that responsibility onto the private contractor simply because one reason would be the liability issue. The holder of the permit is responsible for anything that happens to that site even after the construction project is over with. The other bigger reason or a reason for the policy was economics. Highway contractors are innovative. They're entrepreneurs. They can go out and they can find different waste sites. They can cut a deal, so to speak, if you want to use that language, with a property owner in a waste site. The Highway Department would have to go through an appraisal and purchasing process and hold title to that property after the project is over. With having the contractors do it, they can go out, they can lease it, they can buy it. They can work with the property owner to improve their property, and all of that boils down to economics in the bidding process to the Division of Highways.
In this case, the record includes evidence that no fewer than six other suitable waste sites were available in the immediate vicinity of the DOH's proposed construction project. Among those who testified on behalf of CEI in the underlying proceedings were landowners whose properties were available for use as waste sites and even other contractors who were CEI's business competitors. The record below also demonstrates that CEI purchased this property for a use which was instrumental in running the daily operations of its businesses. Nevertheless, the State, for some mysterious reason, was apparently determined to take CEI's land without regard to any other available alternative sites.
This Court previously explained in Major v. DeFrench, 169 W.Va. 241, 251, 286 S.E.2d 688, 694-695 (1982):
The United States and West Virginia Constitutions guarantee that no person shall be deprived of life, liberty or property without due process of law. W.Va. Const. art. 3 § 10; U.S. Const. amend. XIV. It is fundamental to say that due process guarantees freedom from arbitrary treatment by the state. Thus whenever government action infringes upon a person's interest in life, liberty or property, due process requires the government to act within the bounds of procedures that are designed to insure that the government action is fair and based on reasonable standards. (Citation omitted.).
It is very significant that the folks who drafted the above language included the word "property." They could have easily have said that no one can be deprived of life or liberty without due process of law and the constitution would still have been a wonderful document. But, the framers included "property." They obviously thought being *241 deprived of property was equally as reprehensible and odious as being deprived of life or liberty. Nevertheless, it is clear that our founding fathers were terrified of situations precisely like those that occurred in this case where due process was ignored. Moreover, due process simply has to mean more than the State paying some arbitrary or desultory price for land after forcibly taking it. Due process must at least stand for the principle that the taking of private property should occur only for a public purpose and then as a last resort, and only when there is no other reasonable alternative.
I also must point out that this particular road project was a federal project. As such, I believe that the taking of CEI's land was in violation of controlling federal law which holds that highway construction contracts cannot specify mandatory waste sites absent very particularized supporting facts. Specifically, Title 23 C.F.R. § 635.407(g), provides that:
The contract provisions for one or a combination of Federal-aid projects shall not specify a mandatory site for the disposal of surplus excavated materials unless there is a finding by the State transportation department with the concurrence of the FHWA Division Administrator that such placement is the most economical except that the designation of a mandatory site may be permitted based on environmental considerations, provided the environment would be enhanced without excessive costs.
With the aforementioned in mind, it was clear that the DOH did not comply with federal regulations and acted in an arbitrary and capricious manner in taking CEI's property.
In summary, the taking of CEI's land was not proper under the facts of this case. The taking was arbitrary and capricious as the record shows plainly that this particular site was not needed for this project as other suitable land was readily available to the State to use for a waste site. For these reasons, I believe this parcel of real estate should have been returned to CEI.
Therefore, for the reasons stated above, I respectfully dissent.
BENJAMIN, Justice, dissenting.

(Filed Jan. 9, 2009)
I dissent from the majority decision because the circuit court's decision to permit the taking of this property is arbitrary and capricious, and in contradiction with applicable federal rules and regulations.
In the case sub judice, the original project plans did not refer to a waste site. All bids received for this project were originally rejected by DOH. At the time of the final hearing and judgment, no award had been made for this project. Testimony was taken during the proceedings that indicated that the pattern, practice, and custom on road construction projects generally and on this project in particular provided for the contractor to locate and to purchase or lease waste material sites. After rejecting all bids the DOH changed the project plans to state that CEI's property "would be provided for a potential waste site to be used if the contractor so desires."[1]
It is a fundamental premise of eminent domain power that the property taken will be used for a public purpose. Our precedent requires that before the government may condemn a citizen's land, the taking must be deemed necessary to carry out a public purpose. F.R.B. Cemetery Association v. Redd, 33 W.Va. 262, 10 S.E. 405 (1889)("An application to condemn land for public use must distinctly state that the land is needed for public use, and will, when condemned, be devoted to such public use"). As a condition precedent to the exercise of eminent domain powers it must be established that the taking is for public use, that the taking is necessary to achieve that public use, that the use which the public is to have is fixed, definite, and direct, and that the use which the public must have is a substantially beneficial use. Gauley & S.R. Co. v. Vencill, 73 W.Va. 650, *242 80 S.E. 1103 (1914); State v. Professional Realty Co., 144 W.Va. 652, 110 S.E.2d 616 (1959); Charleston Natural Gas Co. v. Low, 52 W.Va. 662, 44 S.E. 410 (1901); see Vol. 7A Michie's Jurisprudence Eminent Domain §§ 16-22; Nichols on Eminent Domain (3d ed.) 62.07[3][c][ii].
Federal regulations prohibit the government from mandating a waste site in the absence of specific findings as to the needs and propriety of doing so. Title 23 C.F.R. § 635.407(g) specifically provides:
The contract provisions for one or a combination of Federal-aid projects shall not specify a mandatory site for the disposal of surplus excavated materials unless there is a finding by the State transportation with the concurrence of the FHWA Division Administrator that such placement is the most economical except that the designation of a mandatory site may be permitted based on environmental considerations, provided the environment would be substantially enhanced without excessive cost.
Title 23 C.F.R. § 635.407(g) (Emphasis added). Because the use of the waste site at issue was not, and according to federal regulation and could not be, mandatory, it was not necessary for a public purpose. Thus, it was not the proper subject of eminent domain proceedings.
In assessing whether the taking was necessary for a public purpose, the circuit court should have considered this federal regulation. The Supremacy Clause of the U.S. Constitution, Article VI, requires that all courts in this State conform their decisions to governing applicable federal law. It provides, in part, that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof. . .shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . ." Any state law that is in conflict with federal law is nullified. Tipton v. Secretary of Educ. of United States, 768 F.Supp. 540 (S.D.W.Va. 1991); Jones v. Credit Bureau of Huntington, Inc., 184 W.Va. 112, 399 S.E.2d 694 (1990); DK Excavating, Inc. v. Miano, 209 W.Va. 406, 549 S.E.2d 280 (2001).
The power of eminent domain is to be exercise with restraint, not abandon. Southwestern Illinois Development Authority v. National City Environmental, L.L.C., 199 Ill.2d 225, 263 Ill.Dec. 241, 768 N.E.2d 1 (2002). Thus, when construction plans delineate that a particular property may or may not be used as a waste site, it is not certain that the property will in fact be used for a public purpose, and thus, a taking under eminent domain is inappropriate.
The taking by DOT herein was both arbitrary and capricious and contrary to the law. I therefore agree with and join Chief Justice Maynard in dissenting to the majority opinion.
NOTES
[1] Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008 and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.
[2] The original tract of property from which the 31.96 acres at issue in this case is derived consisted of 79.08 acres. CEI paid $125,000.00 for the total acreage.
[3] CEI's sister company, Heeter Construction Inc., had previously been awarded contracts for several sections of Route 10 in Logan County.
[4] CEI expended $252,000.00 on improvements on the property before the DOT received its bids in May 2006.
[5] According to the complaint filed in the underlying action, the Sheriff was joined "for any taxes that may be due or owing."
[6] The DOT tendered to the circuit court the sum of $119,000.00 which was the DOT's estimated fair market value of the property interest to be taken by the condemnation proceeding. The compensation aspect of the condemnation proceeding has not been concluded.
[7] The office of the state road commissioner was renamed West Virginia Commissioner of Highways in W.Va.Code, 17-17-2A-1 [2002].
[8] Under Federal law the DOT/DOH cannot specify mandatory waste sites:

The contract provisions for one or a combination of Federal-aid projects shall not specify a mandatory site for the disposal of surplus excavated materials unless there is a finding by the State transportation department with the concurrence of the FHWA Division Administrator that such placement is the most economical except that the designation of a mandatory site may be permitted based on environmental considerations, provided the environment would be enhanced without excessive costs.
Title 23 C.F.R. § 635.407(g).
[9] 54-2-2. Pleadings; verification; parties.

The pleadings shall be in writing and shall be verified. The petition shall describe with reasonable certainty the property proposed to be taken, and may embrace one or more parcels of land where the ownership is the same. If an estate less than a fee is proposed to be taken, the petition shall describe with reasonable certainty the particular estate less than the fee which it is proposed to take, the name of the owner or owners thereof, the manner and extent of their respective interests. If there are any liens upon or conflicting claims to such real estate, the petition shall state the nature and amount of such liens and claims and the names and places of residence of the persons who hold the same, so far as known to the petitioner. Where there are persons interested in the property proposed to be taken whose names are unknown to the applicant, or it is not known to the applicant whether there are any other persons interested in the property proposed to be taken, or there be any contingent or executory interest or estate in such property which is liable to vest in or to open and let in persons not in being, such fact shall be stated in the petition and such persons, if any, shall be made parties defendant to such petition by the general description of parties unknown. The joinder of any person having only a contingent or executory interest in the property proposed to be taken shall not be necessary when the person not joined is virtually represented by any other party or parties defendant; and where such virtual representation exists no order or decree made thereunder shall be deemed erroneous or void because of such nonjoinder. The petition shall also state the use to which the estate sought to be taken is intended to be appropriated.
[1] Specifically, the modified construction plans provide that: "Right of way, Right of Station 361 + 00 is provided for a potential waste site to be used if the contractor so desires. All design associated with the waste site including drainage and erosion and sediment control shall be submitted to the Engineer for approval before using the waste site."