IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-0380

_____

FILED

May 7, 2024

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

TONY PALETTA,
Petitioner,

v.

NELSON PHILLIPS, III, NATHAN PHILLIPS, ROBERT NELSON PHILLIPS, II,
and WEST VIRGINIA DEPARTMENT OF TRANSPORTATION,
DIVISION OF HIGHWAYS,
Respondents.

_____

Appeal from the Circuit Court of Harrison County
The Honorable Christopher J. McCarthy, Judge
Case Number: 19-C-52-1

REVERSED AND REMANDED

_____

Submitted: March 13, 2024
Filed: May 7, 2024

Norman T. Farley, Esquire
West & Jones
Clarksburg, West Virginia
Counsel for Petitioner

Frank E. Simmerman, Jr., Esquire
Chad L. Taylor, Esquire
Frank E. Simmerman, III, Esquire
Simmerman Law Office, PLLC
Clarksburg, West Virginia
Counsel for the Phillips Respondents

Travis S. Haley, Esquire
West Virginia Division of Highways
Legal Division
Charleston, West Virginia
Counsel for Respondent
West Virginia Department of
Transportation Division of Highways

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2. "A county road established and opened pursuant to law continues as such until vacated or discontinued in the manner prescribed by law." Syllabus Point 2, *Dudding v. White*, 82 W. Va. 542, 96 S.E. 942 (1918).

3. "The necessity for the improvement of a state highway is within the sound discretion of the state road commissioner, and his decision that such necessity exists will not be interfered with by the courts, unless in the exercise of such discretion he has acted capriciously, arbitrarily, fraudulently or in bad faith." Syllabus Point 2, *State by State Road Commission v. Professional Realty Company*, 144 W. Va. 652, 110 S.E.2d 616 (1959).

Armstead, Chief Justice:

Tony Paletta ("Petitioner") appeals the order of the Circuit Court of Harrison County, West Virginia that granted summary judgment in favor of Nelson Phillips, III, Nathan Phillips, and Robert Nelson Phillips, II, ("the Phillips Respondents"), finding that Harrison County Route 36/5 ("CR 36/5"), crossing the Phillips Respondents' property and providing access to Petitioner's property, was not a public road. On appeal, Petitioner argues that the circuit court erred in granting summary judgment because (1) the Phillips Respondents did not meet their burden of proof to show there are no genuine issues of material fact and (2) the circuit court applied the wrong standard in concluding that CR 36/5 is not a part of the state highway system.

After review, we find that the circuit court erred in concluding that CR 36/5 is not a public road and in granting summary judgment in favor of the Phillips Respondents. Accordingly, we reverse and remand this matter for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner and the Phillips Respondents own adjacent land near West Milford in southern Harrison County, West Virginia. Petitioner owns three contiguous parcels of land consisting of approximately 52 acres, 7.25 acres, and 20.136 acres. Portions of this property have been in Petitioner's family since the 1920s. CR 36/5 begins at a point on Harrison County Route 36 and runs in a generally southerly direction, crossing an adjacent

1

five-acre parcel, which was purchased by the Phillips Respondents as joint tenants with right of survivorship in 2016. CR 36/5 then crosses onto Petitioner's parcels, providing access to and from those parcels. This road was never improved by the West Virginia Division of Highways ("WVDOH") but it appears on WVDOH maps for Harrison County beginning in 1937. Indeed, during the 1970s or 1980s, a strip mine operation placed overburden along the path of CR 36/5, obstructing it.

After the Phillips Respondents acquired their five-acre parcel, it was developed into a farm. During that process, the Phillips Respondents placed gates and/or fences across CR 36/5, posted a no trespassing sign, and limited Petitioner's use of CR 36/5. After the Phillips Respondents impeded Petitioner's access by way of CR 36/5, Petitioner contacted the WVDOH to discuss the status of the road. As a result of that contact, WVDOH "met [with] Mr. Phillips on site [February 6, 2017]. Informed Mr. Phillips of public access and the gate/fence issue."[1] WVDOH then informed Petitioner on February 7, 2017, that "there is a ROW [right of way] there. He would have to have it surveyed. Then can upgrade to current WVDOH specs. With a permit. The WVDOH would then maintain according to traffic count & schedule."[2]

---

[1] From the context, it is unclear to which Mr. Phillips the WVDOH record refers.

[2] The WVDOH notes of both the discussion with Mr. Phillips and Petitioner are recounted here verbatim.

2

Still having access issues, Petitioner then brought suit in circuit court seeking an order requiring the Phillips Respondents to remove the gates/fences and allow him access to his property, using CR 36/5. Importantly, Nelson Phillips filed a combined pro se answer and motion to dismiss. In that filing, he sought dismissal of the complaint, admitting that CR 36/5 was a public road, and consistent with the information discussed with WVDOH, stated that Petitioner:

> [H]as to have a survey of the road and State Road Permit for any development of a road. And this road has to be built [to] State road specifications. . . . This road was never developed. There [were] no roads across my property when I bought it. The land was heavily wooded and filled with swamp holes. I cleared this land and repaired it for farm use.

Additionally, Nelson Phillips stated, in what is styled as a counterclaim, that "I Nelson Phillips [am] not stopping the State Road from going through."

As the matter proceeded, the circuit court recognized the need for the WVDOH to be made a party to the case and entered an order joining WVDOH as an indispensable party. After WVDOH was properly joined, written discovery was served upon WVDOH. In its answers to requests for admissions, WVDOH admitted that state road funds had not been spent on CR 36/5 in the last thirty years. WVDOH also admitted that CR 36/5 does not presently exist, but that it did physically exist in the past. Additionally, WVDOH admitted that it had no plans to make any improvements to CR 36/5.

3

Following discovery, the Phillips Respondents filed a motion for summary judgment, which the circuit court granted, finding that CR 36/5 was not a public road. The circuit court explained this ruling as follows:

> (1) [T]here is no specific description of the length of the road or where it starts on the "scroll,"[3] (2) the [WVDOH] has stated that "at some point in the later 1960's or early 1970's, [CR 36/5] was obliterated when overburden from a strip mine was discarded upon it," (3) the [WVDOH] has admitted "the road no longer exists in an identifiable form and is represented on all Harrison County Road maps dated after the 1970's as impassible, (4) the [WVDOH] has stated "no public funds have been used to improve or repair what was previously designated as [CR 36/5] in the past thirty[-]year window,["] (5) the photos provided to the [circuit c]ourt of the area where the road is purported to be shows overgrowth and no type of road at the time that [the Phillips Respondents] obtained the property, (6) in all the previous years before [the Phillips Respondents] obtained the property, [Petitioner] used alternative means to access his land, (7) the [WVDOH] has stated "it has no plans or designs/schematics to make repairs or improvements to the road previously designated as [CR 36/5]," and (8) the [WVDOH] admitted that there is no drainage or paving on the property associated with any road [or] relating to the existence of a road.

> Of the evidence provided to this Court, it seems clear that the [WVDOH] does not recognize this road as part of the State Road system. In their answers to the interrogatories in

_____

[3] The term "scroll road" refers to county roads that became state roads by an Act of the Legislature in 1933. *See discussion below*. According to WVDOH counsel, the term "scroll" means a document maintained by the WVDOH that defines a scroll road that was brought into the State's jurisdiction in 1933. Among other things, the scroll defines the length and width of the public road. The historical context of the process of development of the scrolls is discussed in detail herein.

Importantly, during the pretrial hearing in this matter, the Phillips Respondents' counsel admitted that CR 36/5 was a scroll road but averred that such road "never existed."

4

this case, the [WVDOH] has stated outright that there is no longer a passible road in this location, nor do they intend to construct it into a passable road.

Petitioner appeals the circuit court's grant of summary judgment.

## II. STANDARD OF REVIEW

As we are reviewing the circuit court's grant of summary judgment, our firmly established review is of such cases is de novo: "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

## III. ANALYSIS

On appeal, Petitioner contends that the circuit court erred in granting summary judgment to the Phillips Respondents. After review, we agree with Petitioner that the circuit court erred by finding that CR 36/5 is not a public road. Our analysis explaining our conclusion begins with a discussion of the development of public roads in West Virginia. After providing this background, we analyze the processes for disposition of WVDOH property and conclude that because such process was not implemented regarding CR 36/5, it remains a public road.

Because West Virginia was once part of Virginia, the process of development of our public roads began over two hundred years ago in Virginia. Thomas Jefferson

5

succinctly described the process of establishing and maintaining public roads in Virginia following the American Revolution in his *Notes on the State of Virginia*:

> The roads are under the government of the county courts, subject to be [controlled] by the general court. They order new roads to be opened wherever they think them necessary. The inhabitants of the county are by them laid off into precincts, to each of which they allot a convenient portion of the public roads to be kept in repair. Such bridges as may be built without the assistance of artificers, they are to build.

Thomas Jefferson, *Notes on the State of Virginia*, Query XV, 161-2 (Philadelphia: Prichard and Hall, 1788).[4]  According to the Supreme Court of Virginia, the power to open, extend, and alter public roads was within the sound discretion of the county court.  *See Lewis v. Washington*, 46 Va. 265 (1848).  This authority "to establish public roads and landings, is a branch of [the county court's] police jurisdiction, conferred for the benefit, and to be exercised at the common expense of all the citizens of the county." *Muire v. Falconer*, 51 Va. 12, 14 (1853).

The same process as described by Jefferson in his *Notes* was still substantially in place at the time of West Virginia's statehood in 1863.  County courts[5] continued to have jurisdiction of public roads within their boundaries and had the authority

---

[4] The first attempt to create a system of statutory responsibility for public road upkeep began with the English Parliament's enactment of the Highways Act of 1555. *See* 2 & 3 Ph. & M. c. 8 (1555).

[5] County courts were designated as county commissions in 1974.  *See* W. Va. Const. Art IX, § 9.

to build them wherever they deemed appropriate. *See* W. Va. Rev. Stat. Ann. Ch. 171 §§ 1-2 and §§ 25-6 (1879). Each county was divided into precincts and the precincts were supervised by a surveyor of public roads.[6] *See id.* §§ 7 and 12. Just as in Jefferson's time, the county courts had the authority to "contract and pay for making, improving or keeping in order the whole or any part of any county roads within the county." *Id.* § 26.

The process by which public roads were removed from the county court's jurisdiction was established by code:

> The county court of a county may upon petition, direct any road or landing therein to be discontinued; but notice of every such petition must be given three weeks at least before it is acted upon, by posting copies of such notice at the front door of the court house [sic] and at three other public places in every district in which any part of the said road or landing may be. Upon such petition after notice is given as aforesaid, the county court shall appoint two or more viewers or a committee of their own body, to view such road or landing and report in writing whether in their opinion any, and if any, what inconvenience would result from discontinuing the same. Upon such report and other evidence, if any, the court may discontinue the road or landing, taking care in every case of an established postroad not to discontinue the same until another has been established.

W. Va. Rev. Stat. Ann. Ch. 171 § 30 (1879). Unless a county road was lawfully discontinued, it still constituted a public road:

> Every county road heretofore established and opened pursuant to law and which has not been lawfully discontinued

---

[6] Each precinct required "[e]very able[-]bodied male person not under twenty-one nor over fifty years of age" to provide labor to "open, construct and keep in good repair the roads and bridges" within the precinct. *Id.* § 12. Only those found to be "unable to perform such work" and/or "ordained ministers of the gospel and regularly in charge of congregations" were exempt from this labor requirement. *Id.* §§ 15 and 63.

7

> or vacated, shall continue as such, subject to the provisions of this chapter, until properly discontinued; and every road worked as public road under the direction of a surveyor of roads, shall in all courts and places be deemed a public road.

*Id.* § 31.

It was not until the dawn of the automotive age, and the beginning of the twentieth century, that "a policy of permanent roads and intelligent direction in their construction" was established, which began the process of transferring county routes to the State's jurisdiction. James Morton Callahan, *History of West Virginia Old and New*, Vol. I, 547 (The American Historical Society, Inc., 1923). In 1907, the Legislature created the office of State Highway Inspector and directed that office to report to the Governor and the Legislature on the condition of the public roads in the State. W. Va. Acts 1907 c. 60 §§ 1 and 5.

In 1909, in an effort to implement a modern system of public roads, the Legislature created an Office of Public Roads, overseen by a Commissioner of Public Roads, providing a means for state aid in road construction. *See* W. Va. Acts 1909 c. 53 §§ 1 & 3. The Office of Public Roads was abolished in 1911, along with the office of Commissioner of Public Roads, having the effect of returning responsibility over public roads to the various county courts. *See* W. Va. Acts 1911 c. 59. However, in 1913, the Legislature reversed course and established a three-member State Road Bureau, with authority "to supervise and to furnish information as to the location, construction and

8

maintenance of all public roads in this state; to provide for giving instruction in road building and to supervise such instruction, and to render assistance to the county road authority." W. Va. Acts 1913 c. 41 § 4. Thereafter, in 1917, the State Road Bureau was reconstituted as the State Road Commission, and all road laws were recodified, to ensure eligibility for newly created federal road funding. *See* W. Va. Acts 1917 c. 66 § 5.

When the electorate ratified "The Good Roads Amendment of 1920," the Legislature was directed to adopt a system of state roads and highways throughout the State:

> The Legislature shall make provision by law for a system of state roads and highways connecting at least the various county seats of the state, and to be under the control and supervision of such state officers and agencies as may be prescribed by law. The Legislature shall also provide a state revenue to build, construct, and maintain, or assist in building, constructing and maintaining the same and for that purpose shall have power to authorize the issuing and selling of state bonds, the aggregate outstanding amount of which, at any one time, shall not exceed fifty million dollars.

> When a bond issue as aforesaid is authorized, the Legislature shall at the same time provide for the collection of an annual state tax sufficient to pay annually the interest on such debt, and the principal thereof within and not exceeding thirty years.

W. Va. Const. amend, The Good Roads Amendment of 1920, ratified Nov. 2, 1920. As a result of this constitutional amendment, the Legislature classified the types of public roads then existing in the State, making a distinction between State Roads and County-District Roads:

9

The public roads of this state shall be divided into two classes, to be known respectively, as "State Roads" and "County-District Roads." "State Roads" shall include all roads which pursuant to the provisions of this act shall have been taken over for construction and maintenance by the state road commission. "County-district roads" shall include all other public roads except streets and other public ways in incorporated towns and cities.

W. Va. Acts 1921 c.112 § 4 (eff. Apr. 21, 1921).

In 1933, with the authority granted it by The Good Roads Amendment of 1920, the Legislature transferred jurisdiction of the then-existing County-District Roads from the various county courts and placed those roads under the jurisdiction of the State Road Commission. "The Commissioner [of the State Road Commission] shall take over the county-district roads on the first day of July, one thousand nine hundred thirty-three, and shall assume charge of their further construction, reconstruction and maintenance as a part of the state road system." W. Va. Code § 17-4-2 (1933).[7] That same act defined "primary roads" as "all roads under the control and operation of the state road commission, or are designated as state roads, at the time of the adoption of this act and roads hereafter designated as primary roads." W. Va. Code § 17-1-26 (1933). "Secondary roads" were defined as "all roads and bridges now operated as part of the county-district road system,

---

[7] In 1957, the State Road Commission became the Department of Highways, overseen by a Commissioner of Highways, which Department assumed responsibility for all public roads then under the auspices of the State Road Commission. *See* W. Va. Code § 17-2A-1 (1957). As a part of the Executive Reorganization Act of 1989, the Department of Highways was reconstituted as the Division of Highways, a division under the umbrella of the larger Department of Transportation. *See* W. Va. Code § 5F-2-1 (1989).

except bridges and approaches maintained by county courts within municipalities." W.

Va. Code § 17-1-27 (1933). As a part of this takeover, the Legislature directed that:

> Upon adoption of this article, the Commissioner shall, when by him deemed necessary, make surveys to determine the relative importance, service and condition of the secondary roads. Wherever adequate maps do not exist, the Commissioner shall prepare a map of the secondary roads of each county as the work progresses and file a copy of the map in the office of the clerk of the county court [now commission] with an order of the commission showing the official act and giving general description of the roads in the county.

W. Va. Code § 17-4-3 (1933).[8] The scrolls discussed herein are the records that were

created at the direction of the Legislature in 1933 to survey those roads.

---

[8] We have found the process by which County-District Roads were brought into the state road system to be constitutional:

> That portion of chapter 40, Acts of the Legislature, First Extraordinary Session 1933, authorizing the state road commission to assume control and supervision, to the exclusion of county courts, of "state roads," as defined in section 28, article 1 . . . , thereof, is constitutional.

> The effect of chapter 40, Acts of the Legislature, First Extraordinary Session 1933, was to vest control and supervision of all "state roads," as defined in section 28, article 1 . . . , thereof, not theretofore taken over, in the state road commission as of July 1, 1933.

Syl. Pts. 1 & 2, *Hill v. Barbour Cnty. Ct.*, 117 W. Va. 288, 185 S.E. 227 (1936). In *Hill*, we further stated:

> Free rein is given the Legislature to determine what shall be included in a state system, except for the minimum requirement that the county seats must be connected, and what officer or agencies will be called upon to control and supervise

(continued . . .)

Thus, the present system of county roads in West Virginia, now managed by the WVDOH, had its origins nearly three-hundred years ago. The importance of this historical context is two-fold. First, it demonstrates that there was a long history of Legislative involvement, particularly in the early part of the twentieth century, focusing upon improving transportation within the state. Indeed, the county routes established in 1933 were created by Legislative initiative, not a conveyance to the WVDOH. Second, and more important to this matter, large volumes of time and taxpayer expense were consumed with the modernization and designation of West Virginia's highway system. CR 36/5 was not created in a vacuum. Its creation was a small part of a long process that culminated in the takeover of county routes by the State in 1933.

It is within this context that our case law developed regarding how public roads are abandoned. "A county road established and opened pursuant to law continues as such until vacated or discontinued in the manner prescribed by law." Syl. Pt. 2, *Dudding v. White*, 82 W. Va. 542, 96 S.E. 942 (1918). In this regard, we have held that the burden of showing that a public road was abandoned falls squarely upon the party asserting the abandonment:

> the same. The force of the holding in the foregoing well-considered case is, therefore, that the Legislature, if it deems advisable, may bring all roads into one state system and deprive the county courts of any control or supervision over the same.

*Id.*, 117 W. Va. 288, 289-90, 185 S.E. 227, 228 (1936).

12

If it is shown that a highway was once laid out pursuant to law, or created by dedication, the burden of showing a discontinuance, abandonment, or vacation is upon the party who asserts that the public and the abutting owners have lost or surrendered their rights. In the absence of satisfactory evidence of discontinuance, vacation, or abandonment, the presumption is in favor of the continuance of the highway, with the principal and incidental rights attached to it. Not only is this so by force of the maxim we have quoted 'Once a highway always a highway,' but it is so by force of the elementary rule that 'a thing shown to exist is presumed to continue until the contrary is made to appear.'

*Lazzell v. Garlow*, 44 W. Va. 466, 482, 30 S.E. 171, 177 (1898) (citations omitted).

The process of abandonment or discontinuance of a public road is set forth in the West Virginia Code and the regulations adopted thereunder.[9] West Virginia Code § 17-2A-8 (12), grants the Commissioner of Highways authority to "[d]iscontinue, vacate, and close any road or highway, or any part of any road or highway, the continuance and maintenance of which are found unnecessary and improper, upon petition and hearing or upon investigation initiated by the commissioner." W. Va. Code § 17-2A-8 (12) (2021). By regulation, this process ends with the entry of an order by the Commissioner of Highways, removing a public road from the WVDOH inventory:

---

[9] The Commissioner of Highways is also empowered to dispose of WVDOH property in four other ways. First, the WVDOH may sell its excess property. *See* W. Va. Code § 17-2A-19. Second, in certain circumstances, the WVDOH may exchange its property for other property. *See id.* Third, the WVDOH may sell property at fair market value to principal abutting landowners. *See id.* Finally, the WVDOH may sell, transfer, or exchange its property to other public bodies, through approval by the Board of Public Works. *See* W. Va. Code § 1-5-3. None of these methods of disposal are at issue in this matter.

> In every case where the Commissioner of Highways determines that it is in the best interests of the state to abandon and discontinue a road or portion of a road, he or she shall abandon, discontinue, vacate or close it by a formal Commissioner's Order, duly entered in the permanent Commissioner's Order Book as provided for in section 1 of this rule. Any such road or portion of a road shall be abandoned as of the date the Commissioner's Order is entered in the Commissioner's Order Book.

W. Va. C. S. R. § 157-1-5. The Commissioner of Highways is further required to send certified copies of Commissioner's Orders abandoning, discontinuing, vacating, or closing a public road or part of a public road to "[a]ny person who has notified the Commissioner that his or her personal or property interests may be affected by the abandonment, discontinuance, vacating or closing of the road in question." W. Va. C. S. R. § 157-1-6.6.c. Plainly, had the WVDOH implemented the abandonment procedure, which requires affirmative action by the Commissioner of Highways, there would be no question that CR 36/5 was abandoned by the WVDOH. However, there is no evidence in the record reflecting affirmative action by the Commissioner of Highways to effectuate abandonment, a process which ensures that courts do not interfere with the Commissioner of Highways' broad discretion to oversee the state road system:

> The necessity for the improvement of a state highway is within the sound discretion of the state road commissioner, and his decision that such necessity exists will not be interfered with by the courts, unless in the exercise of such discretion he has acted capriciously, arbitrarily, fraudulently or in bad faith.

Syl. Pt. 2, *State by State Rd. Comm'n v. Pro. Realty Co.*, 144 W. Va. 652, 110 S.E.2d 616 (1959); Syl. Pt. 4, *W. Va. Dept. of Transp., Div. of Highways v. Contractor Enterprises, Inc.*, 223 W. Va. 98, 672 S.E.2d 234 (2008); *see also* Syl., *Brady v. Smith*, 139 W. Va. 259,

14

79 S.E.2d 851 (1954) ("The Legislature having by Section 4, Article 4, Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933, vested in the State Road Commissioner the power to 'Construct, reconstruct, repair and maintain the state roads,' the courts of this State may not interfere with the exercise of such power by those entrusted with the execution thereof, except in cases in which the State Road Commissioner, acting through his officers, agents and employees, or through the instrumentality of an independent contractor, has acted in an arbitrary, capricious or fraudulent manner.").

The circuit court based its conclusion that CR 36/5 is not a public road largely upon evidence of non-use. In reaching that conclusion, the circuit court cites *Blamble v. Harsh*, 163 W. Va. 733, 260 S.E.2d 273 (1979), a case that we find is factually distinguishable from the present case. The circuit court relied upon *Blamble* to conclude that evidence of non-use and non-maintenance of CR 36/5 resulted in the road being legally abandoned.[10] In *Blamble*, this Court found that whether the road in question was properly part of the WVDOH system of roads was a jury question because there were discrepancies in the testimony of a WVDOH employee,[11] the information on the scrolls, and information

---

[10] At least one court has found that "non-maintenance or non-use is not sufficient to extinguish a road as a public road." *Bd. of Sup'rs of Albemarle Cnty. v. Ripper*, 790 F. Supp. 632, 636 (W.D. Va. 1992).

[11] The WVDOH employee discussed his recollection as to how the scrolls were created:

(continued . . .)

15

on a WVDOH map. *Id.*, 163 W. Va. at 736, 260 S.E.2d at 275. We read *Blamble* to stand

for the proposition that if evidence is in dispute regarding the *establishment* of a road, such

determination is a jury question. "With the documentary evidence conflicting, the trial

court properly submitted the entire issue to the jury." *Id*. Where the circuit court erred is

that in this case, there is no such dispute as to the establishment of CR 36/5.

"There can be no more vital principle than the preservation of the highways

of the people for their use." *Town of Weston v. Ralston*, 48 W. Va. 170, 177, 36 S.E. 446,

449 (1900) (Brannon, J., concurring). As stated above, the Phillips Respondents had the

---

George Sovick, a fifty-year veteran of the Department of Highways, also testified for appellants. Sovick had been personally involved in the 1933 process of transferring county roads to the State system. Sovick testified that in preparation for the trial he had investigated the State Department of Highways records in Charleston concerning the status of the road. He produced a copy of a "Scroll," a set of line drawings which had county roads schematically represented. He identified one of the lines as representing the road in question. He concluded the road had been a county road prior to 1933. It was his opinion that since it was a county road it would have been transferred to the State in the 1933 "takeover." He said the omission of the road from the 1934 map was a [draftsman's] mistake and not determinative of the road's status. From this testimony the appellants argue it was a public road, and absent a showing of a proper abandonment by the State, the road retained its status as a public road.

*Blamble*, 163 W. Va. at 735-36, 260 S.E.2d at 275 (1979).

16

burden to demonstrate that CR 36/5 was discontinued or abandoned. The parties conceded that CR 36/5 was properly brought into the state road system in 1933 and it physically existed across the Phillips Respondents' property at one time. Indeed, the Phillips Respondents admitted that CR 36/5 was a public road and the WVDOH admitted in discovery that CR 36/5 did exist on the ground at some point in the past. WVDOH also maintained CR 36/5 on its scrolls and maps, thereby "incorporat[ing it] within [the WVDOH's] authority."[12] No evidence was offered showing it was properly disposed of by the Commissioner of Highways. Accordingly, CR 36/5 was properly made a part of the state road system in 1933 and was never properly abandoned, discontinued, vacated or closed by the WVDOH in the manner prescribed by West Virginia law. Therefore, the circuit court erroneously applied *Bramble* to support its conclusion that CR 36/5 was not a public road.

## IV. CONCLUSION

Accordingly, the circuit court's order granting summary judgment to the Phillips Respondents is reversed and this matter is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

[12] We have stated that "if the state abandons the road, or . . . fails to incorporate it within its authority, the road ceases to be a public road." *Miller v. Hoskinson*, 189 W. Va. 189, 193, 429 S.E.2d 76, 80 (1993).